**In re AMERICAN FUEL & POWER CO. et al.**
**No. 1217.**

District Court, D. Delaware.
March 13, 1940.

Charles F. Richards (of Richards, Layton & Finger), of Wilmington, Del., for debtor.

C. W. McConaughy and Robert S. Pasley, Jr. (of Cadwalader, Wickersham & Taft), both of New York City, for Protective Committee.

Leonard J. Obermeier (of Baker, Obermeier, Rosner & Rosenson), of New York City, for Independent Noteholders.

Herbert Rand (of Kaye, Scholer, Fierman & Hays), of New York City, for Manufacturers Trust Co., Trustee.

Stewart Lynch, U. S. Atty., of Wilmington, Del., and John S. L. Yost, Sp. Asst. to Atty. Gen., for the United States.

NIELDS, District Judge.

Petition of a protective committee representing the holders of gold notes of American Fuel and Power Company (hereafter referred to as "American Fuel") for an order authorizing the sale of practically all of the physical assets of four subsidiary companies of the principal debtor.

December 6, 1935 a creditors' petition was filed in this court against American Fuel and Power Company, a Delaware Corporation, under section 77B, 11 U.S.C.A. § 207 (now Chapter X, 11 U.S.C.A. § 501 et seq.) of the Bankruptcy Act. This is a holding company owning stock and other securities of several subsidiary corporations engaged in producing and distributing natural gas in the Kentucky-West Virginia field. Thereafter a temporary trustee was appointed and the appointment later was made permanent.

The protective committee is the holder of $1,754,100 principal amount of the outstanding gold notes of American Fuel and Power Company. In the creditors' petition it is stated: "* * * the assets of the debtor are of substantial value and have, when administered as part of a going concern, an earning power that should be preserved by proceedings for reorganization of the Debtor under Section 77B of the Bankruptcy Act for the benefit of creditors, the Debtor and other interested parties, whereas, if the assets are liquidated, as will be necessary if the lien of said Trust Agreement is foreclosed, their value would be greatly diminished."

Since the filing of said petition no plan of reorganization of American Fuel has been proposed or submitted by any one.

November 28, 1939 Carbreath Gas Company, Inland Gas Distributing Corporation, the Buckeye Fuel Company and Buckeye Gas Service Company, four of the subsidiaries of American Fuel, filed in this proceeding their petitions for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. Each petition was duly approved and the trustee of American Fuel was named temporary trustee for each subsidiary. Subsequently these appointments were made permanent.

In addition to these four subsidiaries, American Fuel owned and controlled three additional subsidiaries, Inland Gas Corporation, Kentucky Fuel and Gas Company and Kentucky Drilling Company. A nominal value of $1,000 is placed on the assets of Kentucky Drilling Company. It may be ignored here.

November 24, 1935 in reorganization proceedings instituted in the District Court of the United States for the Eastern District of Kentucky that court appointed a permanent trustee for Inland Gas Distributing Corporation and for Kentucky Fuel Gas Company. Those proceedings are still pending.

December 4, 1939 John L. Lilienthal and Roger Newhall as a protective committee representing holders of the five year secured 7% convertible gold notes of American Fuel due July 1, 1934 (herein referred to as the "protective committee") filed their petition for an order authorizing the trustee to sell to United Carbon Company practically all of the physical assets of the subsidiary debtors in this proceeding for an aggregate price of $125,000 excepting certain land owned in fee by Carbreath Gas Company.

The United States has intervened in these proceedings and filed an answer to the petition of the protective committee. It objects to an order of sale on the ground that such action "may tend to hamper and impede the United States in its efforts to enforce the anti-trust laws" through a suit instituted by the United States in this court November 4, 1938 against Columbia Gas & Electric Corporation and others seeking, among other things, to restrain the defendants named therein from acquiring, directly or indirectly, any of the physical properties of American Fuel. Objection to the proposed sale is also taken by a number of bondholders on the ground of inadequacy of price. In view of the conclusion hereinafter reached it is unnecessary to pass upon these objections.

The principal subsidiary of American Fuel is Inland Gas Corporation owning leases and pipe lines in Eastern Kentucky. That company is in reorganization in Kentucky. The principal subsidiary in the Delaware proceeding is Carbreath Gas Company. It holds leases on about 5,900 acres in Southeastern Kentucky on which are located 27 gas producing wells. It owns some gathering pipe lines but no transmission pipe lines. It sells all of its gas to the trustee of Inland Gas Corporation and has no other available market for its gas. It also owns in fee simple an undeveloped tract in Kentucky of 35,297 acres. Inland Gas Distributing Corpora-

tion, another subsidiary, owns a gas distributing system in Huntington, West Virginia, and a transmission pipe line connecting its system with the pipe line of Inland Gas Corporation. It buys its gas from Inland Gas Corporation and sells it to about twenty industrial customers in and around Huntington. The subsidiary Buckeye Gas Service Company owns a gas distributing system in and about Ironton, Ohio. It buys most of its gas from Inland Gas Corporation and the remainder from Buckeye Fuel Company. The subsidiary Buckeye Fuel Company produces gas from two wells in Lawrence County, Ohio, which it sells to Buckeye Gas Service Company. Kentucky Drilling Company owns a small amount of gathering pipe lines in Kentucky.

These properties were acquired and designed to function as a part of a single integrated unit built around Inland Gas Corporation. As component parts of a reorganized company they would possess far more value than in the hands of any other company. It is obvious from this record that the present condition of Carbreath and Inland Gas Distributing Corporation has largely resulted from their severance as an operating unit from Inland Gas Corporation and the resulting lack of unified management.

■ The trustee of Inland Gas Corporation has been instructed by the District Court of the United States for the Eastern District of Kentucky to prepare a plan of reorganization by May 1, 1940. Possibly a plan can be worked out which will not involve a sale of the properties at a sacrifice. It does not appear that immediate sales are necessary to prevent loss by reason of failure to pay rents and royalties. The total of unpaid taxes is only nominal. The period of redemption provided by the Kentucky tax laws has not expired. To authorize the sale in this proceeding would strip American Fuel, the principal debtor, of all physical assets and make a reorganization of that company impossible.

Under these circumstances what should be done? This is a reorganization proceeding. Approval of the proposed sale would convert it into a liquidation proceeding. The real question before the court is what is in the best interest of the estate. The petition of the protective committee seeking the order of sale states: "14. In the opinion of your petitioners the Principal Debtor and the Subsidiary Debtors cannot successfully be reorganized as a natural gas producing and distributing system without Inland."

This court is in entire accord with the statement of the protective committee above quoted. Respecting the duty of the court under the reorganization statute the Circuit Court of Appeals of the Seventh Circuit has stated: "And finally, we may add, success under this áct will not be assured, unless the court recognizes that its duties are primarily administrative. It must act as the head of the administrative branch of an enterprise. It cannot sit idly by and act on plans submitted. It must originate, if necessary, and in many instances use all the forces at its command to bring about cooperation of conflicting interests." In re Sterba, 74 F. 2d 413, 417.

■ To meet just such a situation as here exists the Chandler Act, 11 U.S.C.A. § 518, provides: "The judge may transfer a proceeding under this chapter to a court of bankruptcy in any other district, regardless of the location of the principal assets of the debtor or its principal place of business, if the interests of the parties will be best served by such transfer."

It is clear from this record that the interests of the creditors and all other parties will be best served by having the proceedings in this district transferred to the District Court of the United States for the Eastern District of Kentucky.

The petition for an order of sale will be denied without prejudice.

An order of transfer will be entered.