In re AMERICAN FUEL & POWER CO.
and five other cases.

Nos. 8923–8926.

Circuit Court of Appeals, Sixth Circuit.

Aug. 15, 1941.

As Amended Sept. 4, 1941.

Baker, Obermeier, Rosner & Rosenson, of New York City (Oscar S. Rosner, of New York City, of counsel), for Morris Green and others.

George W. Vaughn, of Lexington, Ky., Richard B. Hand, of New York City, and Robert J. Bulkley, of Cleveland, Ohio, for the Van Horn Committee.

LeWright Browning, of Ashland, Ky., and Milbank, Tweed & Hope, of New York City, for W. J. K. Vanston and others.

Martin & Smith, of Catlettsburg, Ky., and Miller, Owen, Otis & Bailly, of New York City (George B. Martin, of Catlettsburg, Ky., and Claude M. Terrell, of New York City, of counsel), for Clyde L. Paul and others.

Logan & Duffy and Arthur G. Logan, all of Wilmington, Del. (Caldwell & Gray and Robert T. Caldwell, all of Ashland, Ky., of counsel), for Ben Williamson, Jr., Trustee.

Stoll, Muir, Townsend & Park, Richard C. Stoll, and John L. Davis, all of Lexington, Ky., for Clinton M. Harbison, Trustee.

Chester T. Lane, Harry Baum, Homer Kripke, Philip Blacklow, and Wm. R. Sherwood, all of Washington, D. C., and Gerald E. Sveeggen, of Cleveland, Ohio, for Securities & Exchange Commission.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

These are appeals by creditors of the above-named debtor corporations from orders entered in bankruptcy reorganization proceedings authorizing and directing Clint M. Harbison, as trustee of the American Fuel & Power Company and Ben Williamson, Jr., as trustee of the Inland Gas Corporation and of the Kentucky Fuel Gas Corporation, to enter into and consummate a proposed settlement of cross-demands between the Columbia Gas & Electric Corporation and the debtors and their subsidiaries.

The question presented is: In bankruptcy reorganization proceedings, what position does a majority stockholder and creditor corporation occupy in relation to other stockholders and creditors of the debtor corporation where such stockholder and creditor files in the reorganization proceedings, stock interest and claims against the debtor which stock interest and claims such stockholder and creditor had theretofore acquired from the public in violation of Section 7 of the Clayton Act, 15 U.S.C.A. § 18?

The facts out of which this controversy arose are not in dispute and are substantially as follows:

The Inland Gas Corporation was incorporated under the laws of Delaware in March, 1927, and the Kentucky Fuel & Gas Corporation was organized under the laws of the same state in May, 1928. Each corporation was organized for the purpose of engaging in the business of producing, transporting and selling natural gas to industrial consumers in Eastern Kentucky and contiguous areas of Ohio and West Virginia. Shortly after the incorporation of the debtor, Inland Oil & Gas Corporation, it sold to the public $4,400,000 6½% first mortgage bonds and $1,500,000 ten-year 7% debentures; and the debtor, Kentucky Fuel & Gas Corporation, issued and sold to the public $4,000,000 6½% first mortgage bonds and $1,000,000 ten-year 6½% debentures. The common stock of both companies was held principally by promoters and underwriters.

In July, 1928, the debtor, American Fuel & Power Company, was organized under the laws of Delaware for the primary purpose of acquiring the capital stock of the debtors, Kentucky Fuel Gas Corporation and Inland Gas Corporation, which objective was achieved by an exchange of its shares for a majority of the stock of the other two corporations. It also sold to the public $2,000,000 of its 7% notes, the proceeds of which were loaned its two subsidiaries and used to acquire additional gas acreage and to build gas transmission pipe lines.

These properties, when acquired or built, were transferred to the Carbreath Gas

Company, Inland Gas Distributing Company, the Buckeye Fuel Company or Buckeye Gas Service Company, all subsidiaries of the American Fuel & Power Company, and all now in bankruptcy reorganization with their trustees parties to these appeals. Some of the properties were transferred to the Kentucky Drilling Company, another subsidiary of the American Fuel Company, which latter company is not in reorganization. Each of the companies sustained operating losses in 1928 and 1929. The Hope Engineering Company, a creditor of the American Fuel & Power Company, managed the properties of the subsidiary companies and in connection with such management recommended to the parent company that through its subsidiaries a franchise be obtained from the city of Detroit, Michigan, for the sale and distribution of gas there and that additional pipe lines from the Eastern Kentucky gas fields be built for that purpose. The project was undertaken and to procure capital from the public, the Hope Engineering Corporation associated with it American Utilities and General Corporation, and Moody-Seagraves Company, investment companies. In March, 1930, this syndicate acquired a majority of the 898,711 outstanding shares of the American Fuel & Power Company's stock and immediately thereafter caused the capital of the corporation to be increased to 1,000,000 shares. The syndicate acquired the additional shares for $500,000 and then entered into an agreement with the Kentucky Fuel Gas Corporation and the Inland Gas Corporation for the period of one year beginning April 1, 1930, that the syndicate would make the advances necessary to meet the monthly sinking fund requirements on bonds of the two companies.

Prior to October 30, 1930, options were acquired for at least fifty percent of the right-of-way for the pipe line, and a permit from the United States for crossing the Ohio River with it was obtained and actual construction immediately begun. The syndicate opened an office in Detroit and assembled a field organization to solicit contracts from prospective industrial consumers of gas in that community and by October 9, 1930, contracts were procured for the sale of approximately 19,000,000 cubic feet of gas per day. On that date the syndicate formally petitioned the city of Detroit for a franchise to lay gas mains in its streets.

Prior to November 6, 1930, the Columbia Gas & Electric Corporation was engaged in the business of producing, transporting and distributing natural gas in the states of Indiana, Ohio, Kentucky, Pennsylvania and New York and controlled through its subsidiaries one-fourth of the total mileage of natural gas pipe lines operating within the United States.

In October, 1928, the Columbia completed a detailed investigation on the financial condition and the gas reserves of the American Fuel & Power Company and its subsidiaries, which showed an unfavorable financial status. Shortly thereafter one of Columbia's vice-presidents stated that the contemplated construction of additional gas pipe lines by the American and its subsidiaries in Ohio constituted an improper invasion of Columbia's territory and when the debtor corporations commenced their expansion into the state of Ohio, the same vice-president stated that his company would not stand idly by and permit the construction of competing natural gas pipe lines across that state. In January, 1930, the Columbia began to purchase in the open market bonds of the Kentucky Fuel and Inland Gas Corporation, and by May 30th of that year had acquired at approximately par, 27% of the bonds of Inland and 28% of the bonds of Kentucky Fuel.

On November 6, 1930, Columbia acquired all of the interest of the Hope Engineering Company and its associates in the American Fuel & Power Company and its subsidiaries for $2,870,706.70, which was the syndicate's original investment plus $350,000 and thereafter Hope disassociated itself from the American and its subsidiaries. Columbia agreed to hold harmless the syndicate from any claim the American Fuel & Power Company or its subsidiaries might have against it for a breach of its agreement to provide funds to enable the Inland and Kentucky to meet their sinking fund payments to and including April 1, 1931.

The Hope Engineering Company had a contract with the American Fuel & Power Company and its subsidiaries to supervise the construction of their pipe lines to Detroit at an estimated cost of $20,000,000 of which it was to receive 4%. Shortly after the Columbia acquired the interest of the syndicate, it made a supplementary three-year contract with Hope for supervision of $20,000,000 of construction work for which it was to receive from Columbia a fee of

4% of the cost. Later the Columbia paid to Hope $53,600 and through one of its subsidiaries, $400,000 additional for cancellation of the contract. No engineering work was done by Hope under the agreement.

After Columbia acquired the interest of the syndicate in American Fuel & Power Company and its subsidiaries, it owned 76% of the common stock of the American and between October and December, 1930, made additional purchases of $358,000 of Inland bonds for which it paid $315,828 and $558,000 of Kentucky Fuel bonds for which it paid $498,898. It also purchased between June and December, 1930, $267,-000 of Inland debentures for which it paid $203,829 and $341,600 Kentucky Fuel debentures for which it paid $268,736, Columbia's total investment in American Fuel and its subsidiaries being $6,318,625.70. At the time Columbia acquired these securities, the American Fuel & Power Company and its subsidiaries were in financial difficulties and the only direct prospective return on any of the securities would arise from the completion of the proposed gas pipe lines to Detroit, and from that source only.

On October 10, 1930, the executive committee of Columbia's Board of Directors adopted a resolution providing for the immediate construction by it of a gas pipe line from Toledo, Ohio, to Detroit, Michigan, but this project was never undertaken.

On September 7, 1930, Columbia acquired control of the Panhandle Eastern Pipeline Company and in 1936, through this subsidiary, it built an extension from its lines to the city of Detroit, from which city it obtained a franchise to engage in the distribution of gas in that city and vicinity.

Columbia removed the directors and officers of the American Fuel & Power Company and its subsidiaries and replaced them with its own nominees, with the exception of the president of the Kentucky Fuel & Gas Company and the Inland Gas Corporation who was continued in office. The same individual was president of each company. After Columbia obtained control, sinking fund payments on the bonds and debentures of the respective companies were discontinued.

Within thirty days after Columbia obtained control of the American and its subsidiaries, it caused Williams and Gibson, a partnership drilling gas wells for the Inland, to institute creditors' suits in the Kentucky State Court for the appointment of equity receivers for the Inland Gas Corporation and the Kentucky Fuel & Gas Company. On December 1, 1930, the directors of these corporations passed resolutions consenting to the appointment of receivers and on December 2, 1930, when Williams and Gibson filed their suits, the corporations entered their appearance to the actions and consented to the appointment as receiver of W. E. Lockhart, their joint president.

Before Williams and Gibson instituted their action, the Columbia caused one of its subsidiaries to promise to pay their claims in full on completion of the work undertaken by them, which was done.

Inland and Kentucky Fuel were placed in reorganization in these proceedings in 1935 and the Kentucky receiver was appointed temporary trustee and continued in that position until succeeded by appellee Ben Williamson in 1937. The first receiver and trustee operated the properties of the Inland and Kentucky as directed by Columbia and all well drilling and construction of pipe lines on their account were discontinued.

The American Fuel & Power Company was placed in reorganization in the Delaware District Court in December, 1935, and a nominee of the Columbia was appointed as its trustee. The Delaware proceedings were transferred to these proceedings in 1940, D.C., 32 F.Supp. 107, and appellee, Clint M. Harbison, succeeded the Delaware trustee.

On petition of appellee, Ben F. Williamson, the court on February 7, 1938, instructed him to institute actions against the Columbia Gas & Electric Corporation to recover damages on behalf of the corporations under Section 4 of the Clayton Act, 15 U.S.C.A. § 15. These actions were instituted and the District Court of Delaware sustained a demurrer to the petitions on the ground the causes were barred by the applicable statutes of limitation of Delaware. Williamson v. Columbia Gas & Electric Corp., 27 F.Supp. 198. On appeal the judgment of the lower court was sustained. 3 Cir., 110 F.2d 15. Certiorari was denied May 27, 1940, 310 U.S. 639, 60 S.Ct. 1087, 84 L.Ed. 1407.

Appellee Ben Williamson, Jr., as trustee of Inland Gas Corporation and as trustee of the Kentucky Fuel Gas Corporation and on behalf of the trustees of American Fuel & Power Company, Carbreath Gas

Company, Inland Gas Distributing Company, Buckeye Fuel Company and Buckeye Gas Service Company, filed in this action a petition for advice and recommended he be authorized and directed to compromise and settle all claims that either corporation had against the Columbia Oil & Gas Company, or that it had against them or either of them. The facts disclosed were as hereinbefore stated.

The terms of the proposed settlements approved by the court are substantially as follows:

1. The Columbia Gas & Electric Corporation filed the following claims against the Inland Gas Corporation:

First mortgage 6½% bonds
  due February 1, 1938......$1,596,600.00
Ten-year 7% debentures, due
  February 1, 1938.......... 320,100.00
General claim.............. 252,313.21

In the course of the proceedings there was paid to the holders of Inland First Mortgage bonds, $25 on each $100 principal amount and the $399,150 due Columbia thereon was impounded. Under the terms of the settlement, Columbia was to surrender to the trustee for cancellation all of the above securities and claims and in exchange therefor was to receive the impounded sum, and in addition $20 on each $100 of the principal amount of bonds surrendered by it payable when a like sum was paid to other bondholders of the same class. An additional sum of $156,530 was to be paid Columbia on or before December 31, 1941, without regard to any other distribution. The total sum to be received by Columbia was $875,000 or 54.2% of the principal amount of Inland bonds owned by it. Columbia also agreed to deliver to the trustee all of the outstanding stock of the Bridge Gas Company, one of its wholly-owned subsidiaries, and $27,954.67 notes of the debtor held by the Bridge Gas Company, which company owned a natural gas pipe line from the fields of the debtor extending across the Ohio River. As a part of the settlement, the Warfield Natural Gas Company, a Columbia subsidiary, agreed to furnish to the Inland on its request 3,000,000 cubic feet of gas per day during the six months' period from May 1st to December 1st of any year for a period of five years. Appellee, trustee, values this contract at $214,650.00. He also estimated that the proposed settlement was $1,500,000 less than Columbia would receive for its

claims against the debtor under the plan of reorganization.

2. The Columbia Gas & Electric Corporation filed the following claims against the Kentucky Fuel Company:

First mortgage 6½% bonds,
  due June 1, 1942..........$1,702,900.00
Ten-year 6½% debentures,
  due June 1, 1938.......... 397,600.00
General claim .............. 65,606.59
Voting trust certificates for
  100 shares of Kentucky Fuel
  stock.

In the course of the proceedings, the court ordered $8 to be paid by the trustee on each $100 principal amount of outstanding first mortgage bonds of the Kentucky. The $136,232 distributable to Columbia was impounded. Under the terms of the settlement Columbia surrenders the foregoing securities and claims for cancellation and in consideration thereof receives the impounded funds, plus one-half of any further sums distributed in liquidation on Kentucky bonds. At the time of the proposed settlement the properties of Kentucky Fuel Company had been sold for $151,000 and Columbia would receive $17,029 less than it would otherwise realize on its first mortgage bonds.

3. The Columbia Gas & Electric Corporation filed the following claims against the American Fuel & Power Company:

Common stock..........1,450,195 shares
Five-year 7% Convertible Gold
  Notes .....................$ 60,000.00
6% Demand notes ............ 552,000.00

Under the terms of the settlement, all of the above securities are to be delivered to the trustee of the American Fuel & Power Company for cancellation. The latter company owned $400,000 principal amount of the second mortgage notes of the Inland Gas Corporation, which are on a parity with the ten-year seven per cent debentures of that company and it also owns all of the stock of the Buckeye Fuel Company, Buckeye Gas Service Company, Carbreath Gas Company and Inland Gas Distributing Company.

An overall provision of the proposed settlements is that the debtors and each of their subsidiaries are to release and acquit the Columbia Gas & Electric Corporation of all claims fixed or contingent either of them or their subsidiaries may have against it.

The Columbia is not a party to this appeal and did not appear in the District Court by attorney or otherwise in connection with the present compromises. It is therefore not bound by the facts in the record, nor by the facts stated in this opinion.

Appellants are either creditors or committees for the protection of the holders of lien securities of the respective debtor corporations and they urge that the facts conclusively show that the primary purpose of the Columbia Gas & Electric Company in acquiring control of the debtor corporations was to eliminate them as potential sources of competition, and that under well-established principles of bankruptcy law, Columbia's claim against the debtors must be subordinated to all other creditors.

The facts in the record impel the conclusion of this court that Columbia's conduct was for the purpose of destroying the debtors and their subsidiaries, and that by its acts, it drew to itself the lifeblood of all the debtors and picked the flesh from the bones of these corporate entities and now, under the terms of the settlement approved by the lower court, is to have a share of the skeleton.

Contracts are the essential basis of property rights and their performance must be strictly maintained by law if credit is to continue. In this sense they are basic to human relations, but society creates values and in the interest of the public good may dictate the alteration or abrogation of contracts imimical to that good. Louisville & Nashville R. R. Company v. Mottley, 219 U.S. 467, 483, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A., N.S., 671.

A duty rests on the courts in the administration of the law to redress social and industrial evils and to this end, the courts apply such remedies as they inherently possess or such as may be conferred on them by the legislative branch of the government.

Section 7 of the Clayton Act, 15 U.S.C.A. § 18, makes it unlawful for a corporation engaged in commerce to acquire directly or indirectly, the whole or any part of the stock or other share capital of another corporation engaged also in commerce, where the effect of such acquisition may be to lessen substantially competition between the corporation whose stock is acquired and the one acquiring it or to restrain such commerce in any section or community or to tend to create a monopoly in any line of commerce.

Section 3 of the Sherman Anti-Trust Act, 26 Stat. 209, 15 U.S.C.A. § 3 makes every contract in restraint of trade or commerce illegal, and every person making such contract shall be deemed guilty of a misdemeanor and on conviction shall be punished by a fine not exceeding $5,000 or by imprisonment not exceeding one year, or both, in the discretion of the court.

The present Bankruptcy Act, Section 167, 11 U.S.C.A. § 567, makes it the duty of the trustee upon his appointment and qualification, if directed by the judge of the court, to forthwith investigate the acts, conduct and financial condition of the debtor and report to the judge any facts ascertained pertaining to fraud, misconduct, mismanagement or irregularities, and any causes of action available to the estate.

It is the duty of the Bankruptcy Court in reorganization proceedings to withhold its aid from parties seeking to obtain a benefit from an agreement tinged with illegality, although this may sometimes result in giving to one something that should belong to another. In these cases the aid of the court is denied because public policy demands such action without regard to the interest of individuals. Continental Wall Paper Company v. Louis Voight & Sons Company, 212 U.S. 227, 262, 29 S.Ct. 280, 53 L.Ed. 486; American United Mutual Life Insurance Co. v. City of Avon Park, 311 U.S. 138, 149, 61 S.Ct. 157, 85 L.Ed. 91.

The method used by the Columbia Gas & Electric Company in obtaining dominion and control of the debtors was a clear violation of the law (United States v. American Tobacco Company, 221 U.S. 106, 188, 31 S.Ct. 632, 55 L.Ed. 663) and the bonds, securities and debts of the debtors on which the Columbia bases its claims are complementary to its unlawful conduct.

It is unquestionably the general rule that the courts will not lend their assistance in any way toward carrying out the terms of a contract the inherent purpose of which is to violate the law and they likewise will refuse to enforce any right directly springing from such a contract, although such right be legal. McMullen v. Hoffman, 174 U.S. 639, 654, 19 S.Ct. 839, 43 L.Ed. 1117.

The purchase by the Columbia Gas & Electric Company of the debtor's stock and bonds was an actual one and in no sense a sham, but its object in acquiring them was to obtain a monopoly and was in violation of the statutory laws of the United States and the result of its conduct was to defraud the minority interests of the debtors.

■ Equity will not permit one to rely on his wrongful act as against those affected by it, but not participating therein, to support his own asserted legal title. This is a principle of widest application. United States v. Dunn, 268 U.S. 121, 133, 45 S.Ct. 451, 69 L.Ed. 876; Independent Coal & Coke Company v. United States, 274 U.S. 640, 648, 47 S.Ct. 714, 71 L.Ed. 1270.

The title of the Columbia to the stock interest and claims which it presents against the debtor has an immediate and necessary relation to its right to enforce them. Its wrongful conduct is not merely collateral to its cause of action against the debtors and its moral turpitude, and not only the actual injuries done to the minority interests of the debtors, must condemn it. The damages sustained by these interests are not inconsequential, although proof of them may be difficult.

Under the Bankruptcy Act, 52 Stat. 893, 11 U.S.C.A. § 591, after the approval of the petition for reorganization, the judge shall prescribe the manner in which, and fix the time within which, proofs of claim of creditors and of the interests of stockholders may be filed and allowed. Also, under the Act, 52 Stat. 893, 11 U.S.C.A. § 597, for the purpose of the reorganization plan and its acceptance, the judge shall fix the division of creditors and stockholders into classes in accordance with the nature of their respective claims and stock. For the purposes of such classification, if necessary upon the application of the trustee, the debtor, any creditor or an indenture trustee, the judge shall fix a hearing upon notice to the holders of secured claims, the debtor, the trustee and such other persons as the judge may designate, to determine summarily the value of the securities and classify as unsecured the amount in excess thereof.

■ In view of the remedial purpose of the provisions of the Bankruptcy Reorganization Act enlarging the category of provable claims, the statute is liberally construed in favor of claimants for whom relief was intended. Its object was to facilitate rehabilitation of embarrassed corporations by disallowing illegal or unconscionable stock interests or claims and by scaling or rearranging their obligations and shareholders' interests, thus avoiding a winding up, a sale of assets and distribution of the proceeds. City Bank Farmers Trust Company v. Irving Trust Company, 299 U.S. 433, 437, 57 S.Ct. 292, 81 L.Ed. 324. Under the Bankruptcy Act, the test of the provability of claims of creditors or the interests of stockholders is the actual existence of valid claims or interests. In re United Cigar Stores Company of America, 2 Cir., 83 F.2d 202, affirmed by the Supreme Court in Meadows v. Irving Trust Company, Trustee, 299 U.S. 464, 57 S.Ct. 307, 81 L.Ed. 353.

■ The claim of a creditor or the interest of a stockholder which is invalid because it is based on or arises out of an illegal or criminal transaction, is not provable or allowable in bankruptcy reorganizations. Deweese v. Reinhard, 165 U.S. 386, 393, 17 S.Ct. 340, 41 L.Ed. 757; Hanauer v. Doane, 12 Wall. 342, 79 U.S. 342, 349, 20 L.Ed. 439; Carmen v. Fox Film Corporation, 2 Cir., 269 F. 928, 15 A.L.R. 1209; Litzke v. Gregory, 8 Cir., 1 F.2d 112; Jackson v. Ludeling, 21 Wall. 616, 88 U.S. 616, 632, 22 L.Ed. 492.

■ The Columbia Gas & Electric Company conceived a scheme to wreck the interests of the debtors which, as a majority stockholder and bondholder, it was its duty to protect. Pepper v. Litton, 308 U.S. 295, 310, 60 S.Ct. 238, 84 L.Ed. 281; Taylor v. Standard Gas & Electric Company, 306 U.S. 307, 323, 59 S.Ct. 543, 83 L.Ed. 669. Under the facts in this record no principle of equity, morals or law requires the court to approve the present claims or stock interests of the Columbia and this court should not lend its aid to further a scheme abhorrent to all recognized rules of right and justice as the facts here show.

The orders of the lower court are reversed and the causes remanded, with directions to fix the division of creditors and stockholders of the debtors into classes according to the nature of their respective claims and stock and it is further ordered that all claims or stock interest of the Columbia in the debtors', title to which it acquired in violation of Section 7 of the Clayton Act, 38 Stat. 731, 15 U.S.C.A. § 18, be rejected and the Columbia take nothing thereby.