**In re INLAND GAS CORP. et al.**
(five cases).
Nos. 11090–11094.

United States Court of Appeals
Sixth Circuit.

March 19, 1951.

John L. Davis, Lexington, Ky., for Clinton M. Harbison.

Oscar S. Rosner, New York City (Jay Raymond Levinson, Rudolph Grunfeld, New York City, on the brief; Baker, Obermeier & Rosner, New York City, of counsel), for Green Committee.

LeWright Browning, Ashland, Ky. (George W. Jaques, New York City, on the brief), for Vanston Committee.

Edward S. Pinney, New York City (William B. Marshall, New York City, on the brief; Cravath, Swaine & Moore, New York City, Andrew J. Conroy, Jr., Peck, Shaffer & Williams, Cincinnati, Ohio, of counsel), for Columbia Gas System, Inc.

Anthony H. Whitaker, Philadelphia, Pa. (J. Victor Bradley, Jr., Norman T. Hayes, Jr., Philadelphia, Pa., on the brief; Bradley & Bradley, Georgetown, Ky., Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel), for Edward J. Caughlin Committee.

Charles I. Dawson, Louisville, Ky. (Thos. S. Dawson, Malcolm Y. Marshall, Louisville, Ky., on the brief; Bullitt, Dawson & Tarrant, Louisville, Ky., of counsel), for Alvin C. Radford and others.

Roger S. Foster, Washington, D. C., John R. Young, Cleveland, Ohio (David Ferber, W. Victor Rodin, Charles J. Odenweller, Jr., Washington, D. C., Warren E. Blair, Cleveland, Ohio, on the brief), for Securities and Exchange Commission.

Before HICKS, Chief Judge, and SIMONS and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

There are here involved five appeals from an order of the district court approving a plan of reorganization for the debtors in proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The appeals overlap. Both appellants and appellees variously challenge and defend findings of fact, conclusions of law and the provisions of the order in multiple aspects. The most important contentions which lie at the root of the whole controversy, however, are in respect to the status that is to be accorded the claims of the Columbia Gas System, Inc., successor to Columbia Gas & Electric Corp., in the distribution of the assets of the debtors, and this leads to a consideration of our previous opinions in In re American Fuel & Power Co., 6 Cir.,

122 F.2d 223, and Columbia Gas & Electric Co. v. U. S., 6 Cir., 151 F.2d 461, and particularly of our mandate in the second of these cases.

### The Columbia Claims

When the controversy first claimed our attention in 1941 it was upon an appeal by creditors of the American Fuel & Power Company, seeking to set aside an order approving a settlement between the trustees of the debtors and the Columbia System. In an exhaustive opinion we held that Columbia had acquired its securities and stock in pursuance of an illegal and inequitable scheme to destroy competition with it by the American Fuel & Power Company and its affiliates, that under the facts of record no principle of equity, morals or law required the court to lend its aid to further a scheme abhorrent to all recognized rules of right and justice. The orders of the court were reversed and the causes remanded with direction that all claims or stock interests of Columbia against the debtors be rejected.

Columbia, not having been a party to the proceedings in that case and so not bound by it, the district court conducted extended hearings upon the Columbia claims, and applying the law as we found it to be, entered orders upon detailed findings of fact and conclusions of law rejecting them all. Again there were appeals mainly by Columbia, challenging the judgment. After careful consideration of the findings and conclusions of the court, and an extended six volume record, we accepted the findings of the district judge but limited the remedy to the subordination of Columbia claims to the "claims of all other creditors in every class." Petitions for amendment and clarification of our mandate were later denied. 6 Cir., 153 F.2d 101.

When our decision was rendered on November 26, 1945 in Columbia Gas & Electric Corp. v. United States, supra, the Supreme Court had but recently decided the case of Hartford-Empire Co. v. United States (Jan. 8, 1945), 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322, wherein the court denied relief for infringement of patents illegally used against those infringing during such illegal use, but declined to hold the patents invalid. We thought that under the facts of that case there might well remain to the appellants property rights which, when their owners had abandoned their illegal practices and been purged of inequity, could still be enforced against subsequent infringers, and that it was for that reason the court would not permit them to be forfeited. We perceived an analogy between the patent rights there preserved and the claims of Columbia here involved, and so while we approved the findings of the district court that the conduct of Columbia in acquiring its securities was inequitable and illegal, we concluded that subordination of its claims to those of other creditors was a more appropriate remedy than their complete rejection. We were probably led to this also by the view of the SEC that upon the facts of the case then developed, the distinction between subordination and rejection was purely academic. Mature consideration leads to the conclusion that the analogy between Columbia securities here and the patents involved in the Hartford-Empire case, supra, is not as close as it then appeared to us to be. The Supreme Court found no evidence that the patents there involved had been illegally or fraudulently obtained. It was their inequitable use that led to the adjudication and there still remained the possibility that when such inequitable use was discontinued and their owners purged of inequity a legitimate property right against subsequent infringers might thereafter be maintained. Here the securities of Columbia were tainted with inequity from the very beginning, and no reasonable expectation may be indulged that in the present status of the debtors there may come a time when Columbia may assert any right in such securities as against creditors who have not been injured by its illegal and inequitable conduct. This is not to say that subordination is not a more appropriate remedy than rejection, in view of the principle applied in the Hartford-Empire case, if by it a just result may be reached. Nor are we precluded by our previous mandate, even if susceptible to the interpretation put upon it by the district court, from considering whether the plan

of reorganization, now for the first time presented, is, in the light of all circumstances brought forth, fair and equitable, since the allowance of claims in bankruptcy remains interlocutory until the estate has been closed, New York N. H. & H. R. Co. v. Reconstruction Finance Corp., 2 Cir., 180 F.2d 241, 243, and no application of the principle of "the law of the case" need deter us from so doing, in an exceptional case, which this is, Reynolds Spring Co. v. L. A. Young Industries, 6 Cir., 101 F.2d 257, 259 however such principle may circumscribe the action of a district court.

When the plan of reorganization was submitted to the court below various parties in interest, and particularly those acting for certain secured creditors of American Fuel and Kentucky Fuel, namely, the Green Committee and the Vanston Committee, urged the court to subordinate the claims of Columbia to such securities as were in the hands of the public. This leads to the interpretation put upon our amended mandate by the court, and requires consideration of the origin and status of the securities, the priority of which is here so strongly asserted.

The Inland Gas Corporation was organized in 1927 for the purpose of producing and selling natural gas to industrial consumers. In 1928 Kentucky Fuel Gas Corporation was promoted by the same persons, financed by the same group of bankers and each issued securities to the public. The promoters also in July, 1928, organized American Fuel & Power Company for the purpose of taking over and holding stock of both Inland and Kentucky Fuel and other operating companies in order to integrate and expand their operations through unified control and management. The stockholders of Inland and Kentucky Fuel exchanged their stock share for share for stock in the holding company, and in July, 1929, American Fuel issued and sold to the public convertible gold notes, the proceeds of which were used to provide financial aid to the operating companies and to acquire additional gas acreage and transmission lines. These securities, were guaranteed by the pledge of Inland stock held by American and Kentucky Fuel. It is the status of the securities so safe-guarded that is now put in issue by the conflicting interpretations of our mandate in Columbia Gas & Electric Corp. v. United States, supra. The district judge, relying upon the definition of the words "claims," "creditors" and "debts" in Article II, Chapter X of the Bankruptcy Act, construed our mandate to provide for subordination of Columbia claims only to the claims of creditors of each corporation and so could not be subordinated to the stock of Inland pledged by Kentucky Fuel and American Fuel. He therefore rejected the contentions of the Green and Vanston Committees. He felt that he was precluded from ignoring the separate identities of the three allied corporations, and interpreted our mandate which read "The decree will be limited in remedy to the subordination of the Columbia claims to the claims of all other creditors of every class," as though it read that "Columbia's claims be subordinated as to each corporation to all other claims against such corporation."

It now seems clear that there was ambiguity in our direction to the district court. Columbia interpreted it when it applied to the Supreme Court for certiorari, 329 U.S. 737, 67 S.Ct. 48, 91 L.Ed. 636, as the protective committees now interpret it, but it here takes an opposite view and agrees with the court. The SEC, in its memorandum on a petition for rehearing, believed that clarification was unnecessary in that the decree would necessarily have to be construed to require the subordination of all of Columbia's claims against the System to those of all other creditors of the System. Difficult as it is for a court to recall subjectively what was in its mind after a lapse of six years, it may, however, after an objective consideration of its recorded reasoning, arrive at some conclusions, even though we may now frankly concede, in view of the impact of the mandate upon the minds of those who were interested in its execution, it lacked the precision and definiteness that should have been expected.

Reading the direction for decree in the light of the discussion contained in the opinion, and as objectively as we may, it is apparent that what was being considered was the injury done to both creditors and

stockholders of closely related corporations. As the full picture is now disclosed, it seems reasonably clear that if there was not complete integration of the companies composing the American Fuel System, there was, to say the least, a coordination of their operations and an interdependence of purpose and capital structure.

We are not advised by this record of the circumstances under which or the representations by which the gold notes of American Fuel supported by the pledge of Inland stock, were sold, and the trust indenture under the terms of which they were issued is not here. The inference is inescapable, however, that the main reliance of the public investors in such securities must have been the Inland stock, based upon Inland assets and pledged for their benefit by American and Kentucky. We are aware that some of the appellants contend that at that time Inland stock had little or no value. The fact remains, however, that the investors must have relied, to large extent, upon the assets of Inland. If not, why was Inland stock pledged? The purpose of the issue was to rehabilitate Inland, to save it from debt default and to increase its holdings of gas acreage, and the inference is likewise inescapable that this must have been understood by the investors. Moreover, it now appears that through excellent management by its trustee Inland assets are sufficient to pay all of its debts exclusive of the claim of Columbia, so that the expectation of its rehabilitation was not wholly vain. Besides, the entire reorganization structure now planned rests upon the assets of Inland. So viewing it, we think that the public security holders whose investments were guaranteed and supported by a pledge of Inland stock are, in a very true sense, creditors or quasi-creditors of Inland, and that whatever the formal arrangement may have been a realistic view is that they are entitled to creditor status in the plan of reorganization. Certainly a court of equity, particularly in a bankruptcy reorganization, has the power and likewise the duty to look through form to substance. Since this creditor status may practically be recognized only through the medium of Inland stock owned by Ameri-can and Kentucky without raising problems of distribution and priorities, the court is directed to amend the plan of reorganization to subordinate Columbia claims to the stock of Inland and assign the residue of Inland assets over its debts, exclusive of Columbia's claims, to the account of their public creditors according to the respective stock interests of 72.6% for American and 26% for Kentucky. Whether this means that we have subordinated securities to stock or have subordinated them to debts, measured by the respective pledges of stock, seems to us immaterial for the result will be the same. Having perceived a creditor status for the holders of securities supported by Inland stock, we are unable to make any provision for the minor interest of 1.4% of the common stock of Inland directly held by public investors, as recommended by the SEC. The holders of such stock were in no sense creditors.

### The Carbreath Claim

The Carbreath Gas Corporation was a subsidiary of American Fuel and organized by it. It presented a claim in the reorganization proceedings based upon alleged breach of contract with Inland for the purchase from it of gas. It sought to establish such contract by reason of a sequence of events which included acquisition by Inland of certain contracts to take and pay for gas produced from wells in Floyd County, Kentucky, owned by the United Carbon Company. By various assignments of contracts for such gas, the rights therein passed to Inland. By deeds dated July 27, 1928, titles to all the leases and properties covered by these contracts were acquired by Inland. Subsequently, and while American Fuel was in full control of the operation of both Kentucky Fuel and Inland, Inland was caused to convey the properties to Carbreath.

The basis of the Carbreath claim is that Inland, after Carbreath acquired the properties, was obligated under its contracts for the taking of gas, to pay therefor certain fixed graduated prices; that when Carbreath obtained title to the gas properties, it was also entitled to enforce Inland's obligations under the contracts. The court

held that when Inland acquired title to the leases which were later conveyed to Carbreath, it became the owner in fee of the properties and the obligations under the contracts with United Carbon Company and others which had been assigned to Inland, became merged with the fee; that when Inland conveyed those properties to Carbreath by covenant of special warranty, Carbreath took title thereto without any obligation on the part of Inland to purchase the gas under the terms of its old contracts; that the record does not show that there existed between Inland and Carbreath any contract upon which Carbreath's claim could be based. It is clear that Inland's only purpose in obtaining the properties was to relieve itself of improvident contracts. We think the court reached the right conclusion and that its rejection of the Carbreath claim should be and is affirmed.

### Advancements of American Fuel

■ A general claim against Inland was filed by the American Fuel Company in the amount of $383,631.62. This arose by reason of the fact that Inland, as of January 2, 1930, was facing default in securities upon which it was obligated. American Fuel purchased them at $47,695.20 less than their par value and turned them over to Inland. Its claim seeks recognition for the debt at the par value of the bonds. The district judge held that in view of the relationship between American Fuel and Inland, their common management and control, coupled with Inland's inability to meet its sinking fund requirements, it was unfair and inequitable for American Fuel to charge Inland a profit therefor. This finding is contested by the Green Committee acting for the creditors of American Fuel, principally upon the decision in Manufacturers Trust Co., Trustee v. Becker, 338 U.S. 304, 70 S.Ct. 127, announced subsequent to the decision below. That case holds that the purchase of indebtedness by directors of a corporation in reorganization while the debtor is a going concern, even though technically insolvent, at a discount, they or those standing in their place may enforce their claims for the face of

the securities in the absence of bad faith or unfair dealings.

We think the Becker case is not here applicable for the reason that the purchase of the securities by American Fuel was, in essence, a loan to Inland. When the bonds and securities were purchased they were turned over to Inland and not held as an asset of American Fuel. The debt has throughout been denominated as an advancement and recovery has been sought on that basis. The American Fuel claim should be reduced as it was by the Bankruptcy Court, to the amount expended on behalf of Inland, and we affirm the finding of the district court in that respect.

### The Status of American Fuel Claims

■ It is urged by various Inland creditors that the general claims of American Fuel should be disallowed as debts and construed as contributions to capital. On behalf of Kentucky the Vanston Committee takes the position that its claims should be given priority over those of American Fuel. We find no error in the court's rejection of these contentions. It must be remembered that American Fuel did not organize Inland but was created by it, and that the funds advanced to Inland were to save it from default and to increase its chances for survival. The court found nothing in the record to justify any conclusion that Inland or its creditors were in any way injured or over reached by American Fuel, and we find none. We perceive no unfairness in permitting American Fuel to participate on a parity with other creditors. The district court's findings in that respect are affirmed.

### Claims to Interest upon Interest

■ The claim filed by the Caughlin Committee on behalf of the holders of Inland debentures and interest coupons, grows out of the provisions of a trust indenture executed by Inland in New York in 1928, and the terms of a second mortgage to secure the debentures executed by Inland in Kentucky in 1930. The debentures constituted a New York contract, and under the law of New York interest upon past-due interest may not be recovered. The claimants contend that the Kentucky mortgage

which incorporates the provision of the trust indenture with respect to interest, is a new contract to pay interest and must be governed by Kentucky law. With this contention we have no concern. In Vanston Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 242, 91 L.Ed. 162, it was held that in determining what claims are allowable and how a debtor's assets shall be distributed, a bankruptcy court does not apply the law of the state where it sits. Bankruptcy courts administer and enforce the Bankruptcy Act as construed to determine how and what claims shall be allowed by applying equitable principles. Interest upon past-due interest is a penalty for failure to pay interest promptly, and where payment of interest is enjoined by a bankruptcy court there is no breach of covenant by any wilful act of the debtor. "Legal suspension of an obligation to pay is an adequate reason why no added compensation or penalty should be enforced for failure to pay."

The Caughlin Committee, however, distinguishes the Vanston case from the present controversy in that it there appeared that allowance of interest upon interest would have been at the expense of junior creditors, while here it has developed that all creditors will be paid in full. It stressed the observation in the opinion that where an estate is ample to pay all creditors and interest, equitable considerations may be invoked to permit payment of this additional interest to the secured creditor rather than to the debtor. Here, it points out, the interest which it claims will only benefit Columbia, the wrong-doer that brought about Inland's receivership and subsequent bankruptcy. It would seem that this argument is untenable in view of our holding that the Columbia claims must be subordinated to the claims of the public creditors of American Fuel and Kentucky Fuel measured by pledged Inland stock. We affirm the rejection by the district court of the claims of the debenture holders and the holders of interest coupons for interest upon interest.

### Sundry Contentions of Appellants

When it appeared that by a possible interpretation of our earlier mandate and its impact upon successful operations of the Inland trustee, a residual equity might remain in the assets of Inland which would be available to Columbia if its claims were not subordinated to the rights of secured public creditors protected by pledges of Inland stock, the Green Committee filed a petition and an intervening petition asserting rights of equitable recoupment, set-off and counterclaim *pro tanto* against Columbia. After hearing, the prayers of the petition were denied upon the ground that there had been an election of remedies. The Green Committee presses its appeal from this decision. We have no occasion to consider it because, with the subordination of Columbia claims to the secured note holders, there appears little probability of a residual equity in the assets of Inland available to Columbia against which the proposed set-off, recoupment or counterclaim could operate if established.

It appears clear from the findings of the district judge that in considering the fair value of Inland assets no value was attached thereto by reason of the probability of recovery by the Inland trustee in a suit under the Anti-Trust Laws for damages inflicted upon Inland by the acts of Columbia. This suit was dismissed in the District Court for the District of Delaware with decision now affirmed by the Court of Appeals of the Third Circuit in Williamson, Trustee of Inland Gas Corp. v. Columbia Gas & Electric Corp., 3 Cir., 186 F.2d 464, December 28, 1950, and now appears to be a final adjudication. We find, therefore, no occasion for reviewing the bases relied upon in the district court for the appraisal of the fair value of Inland assets.

All contentions not specifically discussed have been considered and rejected. It follows from what we have said that we affirm the findings and conclusions of law of the district court as against all the claims of error asserted in each of the appeals, save only the limitation adopted by it upon our previous direction for subordination of Columbia claims. As to this, the order will be amended by a direction to subordinate the claims of Columbia to the public holders of Kentucky and American Fuel obligations secured by pledges of Inland stock in

820

recognition of their creditor status. Columbia claims against American Fuel and Kentucky Fuel will remain subordinated to the claims of their other creditors.

It is clear that this amendment of the order and the highly successful operations of the Inland trustee since its entry, will require substantial changes in the provisions of the plan, including a revaluation of Inland assets and Inland stock. The court is to be free to make such changes as are required by this adjudication and to consider any accretion in value of Inland assets by reason of contracts made, or to be made, with consumers of gas, pending final approval and confirmation of the amended plan .of reorganization.

Remanded to the district court for further proceedings in conformity herewith.