**In the Matter of Petition for Reorganization of TRI-STATE BUILDING MATERIALS COMPANY, a Corporation.**

**No. Bk. 65-132S.**

United States District Court
D. South Dakota, S. D.

Feb. 23, 1968.

Samuel Masten, Sioux Falls, S. D., for the trust.

Christopherson, Bailin, Wilds & Bailey, Sioux Falls, S. D., for Weyerhaeuser Co.

Carlyle Richards, Aberdeen, S. D., for trustee of Tri-State Building Materials Co.

## MEMORANDUM DECISION

BECK, District Judge.

This is a controversy between the Weyerhaeuser Company and the Commonwealth Investment Corporation, under contentions that Commonwealth's claim in the sum of $150,246.24 against Tri-State Building Materials Company, a corporation, in this proceeding [1] should be subordinated to that of Weyerhaeuser's which is for $20,990.30.

The facts giving rise to such claim are not in dispute. It is otherwise, however, as to inferences and rules to be applied and legal conclusions.

Thus, the parties agree: (1) that Commonwealth on May 17, 1962, bought 203 of the then 210 outstanding Tri-State shares of stock for $145,145, and (2) that the transaction was for cash, the seller then a substantial lumber company operating on a reasonable profit basis, carrying a surplus of $140,000 or thereabouts, a substantial inventory, facilities good and a site exceptionally well located.

Also in agreement are the parties on Commonwealth's ownership on June 30, 1962, of 203 out of 210 shares of Tri-State's stock, on the Board of Directors of the two corporations, on that date having transferred $140,000 to Tri-State on its note at 7% and on the same date and as a part of the same transaction having had Tri-State transfer that amount back to Commonwealth.[2]

There is agreement, too, on four of Commonwealth's five member Board of Directors having been on Tri-State's Board of five, as participants in those transactions, and as for other material facts of some significance there is Tri-State's January 29, 1964, $8,400 principal payment on the note, interest in 1963 and 1964 aggregating $10,432.50, total proved claims against Tri-State, aside from those of Weyerhaeuser and Commonwealth, of $35,492.08, and the not disputed purpose in the overall to create or manufacture for Commonwealth an appearance of financial stability and strength it didn't have and which actually did not exist.

With such admissions it is Commonwealth's claim that the note was its share of a Tri-State dividend, but Harris, the accountant witness, had another label, *"horrible business transactions"*, recalling no doubt as he viewed that aspect and the others, that dividends are not by promissory notes but checks against cash and not even then, absent, responsible Board of Director authorization. More on this is in both corporations at the time being on the verge of bankruptcy, the Security Exchange Commission's subsequent nullification of it as a dividend, the no more than a feeble explanation of the note on the books as a "reduction in the asset cost" and the *without actual consideration question*, not faced nor accepted but left dangling because it couldn't be explained.

Hence, on the part of Commonwealth, manipulations, unorthodox business practices and devious high financing, perhaps not meeting all elements of fraud, so as to permit their use on the claim to subordinate, yet sufficient for that purpose inasmuch as all in context shows the note not to have been for consideration, not a gift, not one carrying any legal obligations to pay but actually a media only designed to deceive. Beyond that and compelling we have here, contrary to the trustee's allowance, a claim void in its inception and at all times without legal existence.

In such cases it is for the authorizing authority to disallow the claim if it is " * * * without lawful existence * * * ", 3 Collier on Bankruptcy, 14 Ed., Section 57.14(5), p. 219, and on the power of the bankruptcy court in such situations we have the allowance of a claim remaining interlocutory until the estate has been closed. In re Inland Gas

---

1. Tri-State as well as Commonwealth are in this court under Chapter 10 of the Bankruptcy Act.

2. $166.25 was added as the transfer was made but the reason or reasons for it are not explained.

Corporation, 187 F.2d 813 (C.A. 6, 1951), a Chapter X case, and on reconsideration subsection 57.23(1), at pages 356–357 the following:

"No procedural system can dispense with some measure of derogation from the rigid rules of *res judicata* where manifest injustice has been done due to some inadvertence, clerical error, gross factual mistake, or the like. The Federal Rules of Civil Procedure provide for such relief within the limits of Rules 59 and 60. Bankruptcy proceedings, where time is of the essence, are fraught with dangers of errors and inaccuracies, due to the multiplicity of interested but frequently ill-informed parties, as well as to the comparatively late stage at which a common trustee replaces the individual claimants. The general power of the bankruptcy court within certain limitations to correct its own mistakes or reconsider matters already disposed of, or, as it is called, the right to rehear its orders, *sua sponte* or upon motion of a party in interest, cannot now be seriously controverted. With respect to the bankruptcy court's power to reconsider orders of *allowance* and *disallowance* of claims, the Act is more specific. It provides in § 57k, unchanged by the Act of 1938:

'*Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part according to the equities of the case, before but not after the estate has been closed*' ". (emphasis supplied).

More, generally, on required scanning and scrutinizing of claims in bankruptcy on subordination or on allowance or disallowance, we have In re Black Ranches, Inc., 362 F.2d 19 at 27 (8 Cir. 1966):

"It is firmly established that a reorganization court, as a court of bankruptcy, has the jurisdiction and powers of a court of equity. 6 Collier on Bankruptcy, § 317, p. 657, pertinently observes: 'But § 115 [Chapter X Bankruptcy Act] gilds the lily further by providing:

" 'Upon the approval of a petition, the court shall have and may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere in this chapter conferred and imposed upon it, exercise all the powers, not inconsistent with the provisions of this chapter, which a court of the United States would have if it had appointed a receiver in equity of the property of a debtor on the ground of insolvency or inability to meet its debts as they matured.' "

This principle has judicial sanction. In the landmark case of Pepper v. Litton, 308 U.S. 295, 303, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939), the court stated:

"Courts of bankruptcy are constituted by §§ 1 and 2 of the bankruptcy act, 30 Stat. 544, 11 U.S.C.A. §§ 1(8), 11, and by the latter section are invested 'with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings.' Consequently this Court has held that for many purposes 'courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity'. * * Among the granted powers are the allowance and disallowance of claims; the collection and distribution of the estates of bankrupts and the determination of controversies in relation thereto; the rejection in whole or in part 'according to the equities of the case' of claims previously allowed; and the entering of such judgments 'as may be necessary for the enforcement of the provisions' of the act."

and at page 28:

"A director is a fiduciary. Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 588 [23 L.Ed. 328]. So is a dominant or

controlling stockholder or group of stockholders. Southern Pacific Co. v. Bogert, 250 U.S. 483, 492, 39 S.Ct. 533, 537, 63 L.Ed. 1099. Their powers are powers in trust. See Jackson v. Ludeling, 21 Wall. 616, 624, 22 L.Ed. 492. Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein."

and another, 2 Remington on Bankruptcy, Sections 975–976 (1956) pages 453–454:

"Certain types of claims against a bankrupt estate are regarded with suspicion, subject to 'close scrutiny,' or otherwise under a cloud, as a practical matter, without any statutory basis, but merely because, as experience demonstrates, they are so often a figment of the imagination. Thus, where a corporation is bankrupt or in financial difficulties, there is a recognized tendency to look askance at claims of its controlling stockholders or officers."

Subordination at the instance of Weyerhaeuser, accordingly is granted and on the record as a whole disallowance of the entire claim of Commonwealth, with the earlier approval by the trustee to be vacated.

This decision will be regarded and treated as the court's findings of fact and conclusions of law, and the judgment as to form carrying approval of counsel, forthwith to be submitted to the court for its approval and entry.