**UNITED STATES v. PADDOCK.**

No. 13011.

United States Court of Appeals
Fifth Circuit.

Feb. 9, 1951.

Russell, Circuit Judge, dissented.

Frank B. Potter, U. S. Atty., Fort Worth Tex., O. Morris Harrell, Asst. U. S. Atty., Dallas, Tex., for appellant. ·

Richard U. Simon, Fort Worth, Tex., for appellee.

Before HOLMES and RUSSELL, Circuit Judges, and DOOLEY, District Judge.

HOLMES, Circuit Judge.

This appeal is from a judgment confirming an order of the referee with respect to certain claims filed by the United States in the bankruptcy court. The initial pro-ceeding in this case was instituted pursuant to Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. and was given consideration by this court in United States v. Paddock, 5 Cir., 178 F.2d 394; Id., 5 Cir., 180 F.2d 121. At the time of the initial proceeding, Globe Aircraft Corporation, acting first as agent of the Defense Plant Corporation, created under an amendment to the Reconstruction Finance Corporation Act, 15 U.S.C.A. § 601 et seq., and later as agent of the War Assets Corporation, likewise created under said amendment, had sold and was selling surplus war materials.

Under Contract No. SIA–5–5 with the Defense Plant Corporation, the bankrupt, as agent, agreed to handle and sell government-owned surplus aircraft components on a cost-plus commission basis as provided in said contract, under which the bankrupt, as agent, was entitled to reimbursement for certain costs incurred in the performance of this contract. The contract was terminated on February 6, 1946, and the bankrupt entered into another contract called the Industry Agency Agreement, with War Assets Corporation, under which it was entitled to retain out of the proceeds of such sales a 40% commission. · Globe became delinquent in its payment of the remaining 60% due on sales made thereunder, and on December 13, 1946 (14 days before its bankruptcy), entered into a working arrangement with the War Assets Administration, which had then replaced the War Assets Corporation in the administration of the contract. Under this arrangement, Globe was to remit the full 100% of all moneys received as the result of the sale of surplus war materials. It being apparent that Globe was indebted to the War Assets Administration, and the amount of the indebtedness being unknown, the trustees, with the approval of the court, agreed to continue the working arrangement and to remit the full proceeds collected by them from sales of war surplus materials.

At a later date the appellee, as liquidating trustee, did not continue paying the full 100% to the War Assets Administration, but, under direction of the bankruptcy court paid only 60% of the money collect-

ed by him as proceeds of sales. Globe had sold some surplus war materials to Culver Aircraft Corporation that were not paid for when delivered. An account receivable was set up for them against Culver, and this account fell into the hands of the trustee as did many others, and the trustee proceeded to collect it. Culver was bankrupt at the time appellee sought to collect the account; so, as trustee, appellee filed a proof of claim in another bankruptcy proceeding. The War Assets Administration later intervened in the proceeding, and appellee, under the assumption that Globe was still indebted to the War Assets Administration, agreed that the Culver claim could be paid by the Culver trustee directly to the War Assets Administration. In the latter part of 1947, it became apparent to appellee that the bankrupt estate was no longer indebted to the War Assets Administration, and he ceased making payments.

The War Assets Administration filed proofs and amended proofs of claims in the estate of this bankrupt. Upon a hearing and consideration of these claims, the referee entered his order allowing a claim for rent in the principal sum of $2222.23, together with interest in the amount of $175, making a total of $2397.23. The War Assets Administration's claim for cost of inventory was allowed in the amount of $4500, and its claim under the Industry Agency Agreement was allowed in the principal amount of $19,393.44, together with interest in the amount of $736.22, making a total of $20,129.66. Included in the allowance of $19,393.44, under the Industry Agency Agreement, was the bankrupt's claim against Culver, which had been allowed in the sum of $3682.59. The total amount of these allowances in favor of the government was $27,026.89. The referee found that the government had admitted payments on its claims in the sums of $10,-500 and $2077.37, and a credit thereon of $7,364.18. He further found that the bankrupt was entitled to reimbursements in the amount of $10,929.10 under the terms of Contract No. SIA–5–5. The total amount of payments and credits thus found by the referee in favor of the bankrupt's trustee was $30,870.65. When the allowed claims were offset against the credits due the bankrupt and the payments made by it, there was found to be an overpayment on the part of the trustee in the sum of $3,-843.76. The referee ordered that, when the government received payment of the approved claim in the Culver bankruptcy proceedings, it should forthwith remit such amount to the trustee of this bankruptcy estate, because the Culver claim was included in the government's allowance under the Industry Agency Agreement.

Being dissatisfied with the referee's order, the government petitioned the court below to review same. On a review, the lower court confirmed the order of the referee, and the government appealed to this court, contending that the referee did not have jurisdiction to order it to make a proper accounting for the overpayment made by the trustee or to order it to remit the amount collected on the approved claim in the Culver bankruptcy proceedings, because a referee in bankruptcy has no jurisdiction to enter an affirmative judgment against the United States or to make a finding that the United States is indebted to a trustee in bankruptcy, or any other person; that it was entitled to interest on certain of its claims until they were paid and not just to the date of the filing of the bankruptcy proceedings as found by the referee; that the bankrupt was not entitled to certain reimbursements under Contract No. SIA–5–5 allowed it by the referee, because such reimbursable expenses were not presented as claims to the General Accounting Office to be passed upon by it as required by law; and that the above-mentioned reimbursable costs and expenses under Contract No. SIA–5–5 should have been forfeited because of fraud practiced by the bankrupt in connection with two of the items of said claim.

■ The evidence in the record clearly shows that the trustee, in administering the estate in bankruptcy, overpaid the government. The referee recognized this overpayment in the amount of $3,843.76, and ordered that an accounting be made therefor, but went on further to provide that the order was without prejudice to the right of the trustee to assert a right of set-off

against any other claims of the government allowed in the proceedings, in the event the government failed to account for the overpayment. When this proceeding came on for a hearing, the Culver claim had already been allowed as a preferential claim, but the money had not been paid. The $3,682.59 claim against Culver was included in the $19,393.44 claim, which the referee allowed the government. In other words, the government asserted a claim against Globe based on the latter's contractual liability under the agency contract; and included within this claim, which was allowed in the sum of $19,393.44, was the item of $3,682.59. Thus, when the court allowed the $19,393.44 claim, and found that the same had been paid, all of the indebtedness owing to the government, including its debt arising out of the Culver account, was offset or paid. The Culver money was later received for the purpose of applying it on the government's claim, which had been paid without the necessity of resorting to this particular money. It follows that when the government later received the Culver money, the Globe trustee was entitled to credit for same in an accounting, and the orders entered by the referee directing an accounting by the government for the overpayment and for the proceeds of the Culver claim were not affirmative judgments against the United States to which it had not consented, but were merely recognitions of such amounts for the purpose of protecting the trustee's future rights, since the government had presented and was presenting other claims for allowance and payment.

Section 68 of the Bankruptcy Act, 11 U.S.C.A. 108, provides that in all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor, the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid. In United States v. Roth, 2 Cir., 164 F.2d 575, the bankruptcy court was allowed to grant set-offs against claims of the United States, and the court overruled the government's contention that it could not be called to account in a court of bankruptcy under Section 68. The referee gave the government

the opportunity to account for this money, but did not attempt under his order to enforce collection thereof. He did not say that $3,843.76 or $3,682.59 was set off against other claims of the government, but reserved to the trustee the right in the future to urge the set-off of these amounts against other claims which might finally be presented and allowed. In the 1949 Revision of Collier on Bankruptcy, p. 447, under Section 23.04, the following is said of the bankruptcy court's summary jurisdiction of matters of administration: "During the course of the administration of the estate, many questions may arise, such as the appointment of receivers and trustees, orders giving priority to the claim of a creditor, orders directing a set-off of mutual debts, examinations, determinations of exemptions, allowance and disallowance of claims, and the like. Over such matters the bankruptcy court has exclusive jurisdiction. * * * Thus with respect to all proceedings in bankruptcy in the course of administration, the bankruptcy court may act summarily and in that manner determine the rights of parties affected. And this rule applies even as against the United States government seeking to enforce against the trustee an alleged priority of payment of a government claim; the government must maintain its suit in the bankruptcy court, and not by a plenary suit in equity." See also United States Fidelity & Guaranty Co. v. Bray, 225 U.S. 205, 32 S.Ct. 620, 56 L.Ed. 1055; Hover v. Genessee Valley Trust Company, 2 Cir., 123 F.2d 813.

 The government urges that the referee erred in refusing to allow interest to date of payment on its claim under the Industry Agency Agreement. The proceeds of these accounts receivable, totaling approximately $26,324.28, were deposited in the Continental National Bank of Fort Worth in the name of "Burton B. Paddock, Trustee, Globe Aircraft Corporation, Bankrupt No. 2153, Special Account." The government contends that the legal title to the sum of money in the above special account was in the trustee, but was held by the trustee as security for the indebtedness due the government on account of sales of surplus property made by the bank-

rupt under the Industry Agency Agreement. The referee held that the government had a special or trust interest in only $10,269.83 of said fund, after deducting from the special fund of $26,324.28 the sum of $15,851.40, which could not be collected by the trustee because of defective material, but that the government did not have a specific lien upon the trustee's bank account so as to entitle it to interest to the date of payment of the indebtedness, because the government had not satisfactorily traced the collections from the accounts receivable into the trustee's special bank account. We agree with this ruling. It is the general rule that interest ceases at the date of the institution of bankruptcy proceedings. There are exceptions, one of which is that the holder of a secured claim against a bankrupt estate is entitled to interest thereon beyond the date of bankruptcy, and to the date of actual payment thereof, where the value of the security is ample to satisfy both the principal and interest of such claim. Oppenheimer v. Oldham, 5 Cir., 178 F.2d 386.

The referee's finding that the government had a special or priority interest in the fund on deposit was not a finding that the government had a lien, nor does it have the effect of a finding that it had a lien, on such fund. The cases cited by the government to support its position are cases holding that where creditors have notes bearing interest, which notes and interest are secured by a mortgage, and where upon bankruptcy the trustee takes possession of the mortgaged property and thereafter sells it for a sufficient amount to pay both principal and interest, the creditor is entitled to receive such interest to the actual date of payment. These cases clearly come within the exception to the general rule and make the reason for the exception obvious, that is, that the bankruptcy proceedings do not affect the validity of the mortgage; and yet the trustee has deprived the mortgagee of the use of the property and of the right of immediate foreclosure, and meanwhile the property itself, held by the trustee, is income bearing. Thus, when the trustee sells the property, the mortgagee is entitled to interest until the date of payment, provided the trustee has realized a sufficient amount from the sale. The Industry Agency Agreement upon which the government based its claim did not expressly provide for interest upon delinquent accounts, so the government's claim is not like a claim based on a promissory note that provides for interest. The agreement did not provide that the government had any lien or pledge upon accounts receivable arising out of the sale of surplus properties. We can find no evidence in the record of any assignment of any of these accounts receivable by Globe prior to bankruptcy, or by any of the trustees since bankruptcy. It appears to us that the funds which came into the trustee's account were not withheld from the government, but were paid over to it immediately. These funds did not draw interest or produce income in the hands of the trustee. They were his administrative bank account, and the government was not deprived of any security through the depositing of the funds in the account, but the funds were disbursed to it from the account. The referee's finding that the government had an interest in the collection of the accounts receivable, but that it did not have a lien upon the trustee's bank account, does not create a situation similar to that of a holder of an interest-bearing note secured by an express mortgage upon property which is taken over by a bankruptcy trustee and later sold. Since the government is unable to bring itself within the exception to the general rule, it necessarily follows that it is not entitled to interest on its claim any longer than to the date of the filing of the bankruptcy proceedings.

Under Contract No. SIA-5-5 with the Defense Plant Corporation, the bankrupt was entitled to reimbursement for certain costs incurred in the performance of the contract. It submitted invoices in the amount of $11,304.94 to the Reconstruction Finance Corporation on February 28, 1946, for reimbursable costs and expenses under the contract, which was terminated February 6, 1946, and replaced by the Industry Agency Agreement of February 7, 1946. On July 19, 1946, the bankrupt, in transmitting its remittance to the govern-

ment from its sales under the agreement, deducted the amount of $11,304.94 owed to it as reimbursable costs and expenses. In an amended proof of claim filed August 5, 1947, upon the Industry Agency Agreement, the government allowed a credit for set-off to the bankrupt of $7,016.82 of this amount for reimbursable costs and expenses. The trustee, in a cross action and counterclaim filed March 11, 1948, claimed $10,523.12 for reimbursable costs and expenses under Contract No. SIA–5–5. The government, in its answer to the cross action and counterclaim, filed April 8, 1948, alleged that the referee was without jurisdiction to entertain the cross action and counterclaim, because the claims had not been presented to the General Accounting Office for its examination and by it disallowed in whole or in part. The government, then, in an amendment to its amended proof of claim, struck out and withdrew the credit and set-off of $7,016.82 that it had allowed the bankrupt as reimbursable costs and expenses. The trustee then filed an additional amendment increasing his claim for reimbursable costs and expenses to $10,929.10. The referee, in his order on appellant's proof of claim, found that the bankrupt was entitled to reimbursement in the amount of $10,929.10, or was entitled to have such amount credited on and set off against any sums of money which it owed the government.

We can see no merit in the government's contention that the bankrupt's claims for reimbursable costs and expenses should not be allowed because they were not presented to the General Accounting Office as required by 28 U.S.C.A. § 774, now 28 U.S.C.A. § 2406. Acting through various and sundry federal corporate agents, each of which was legally authorized to contract and be contracted with and to sue and be sued in its own name, the United States contracted and otherwise dealt with Globe Aircraft Corporation prior to bankruptcy, and with the latter's trustee during bankruptcy. Sometimes it was the Defense Plant Corporation acting as agent for the Reconstruction Finance Corporation, which in turn was acting as agent for the United States; at other times it was the War Assets Corporation, which was replaced by the War Assets Administration in carrying out the contract of the War Assets Corporation. Thus the corporate agency, a separate legal entity, was succeeded by a federal bureau which was not a separate legal entity. The claim in bankruptcy was filed by the United States, appearing in its sovereign person and asserting all the rights acquired by its corporate agents in their several dealings with the bankrupt both before and after bankruptcy. It is well settled that, in ratifying the acts of an agent, the principal assumes the burdens as well as the benefits of the contracts made by such agent; and that, when a sovereign comes into court as a litigant, it is governed by the same principles of law that are applicable to ordinary persons, except as stated in Rule 13(d) Fed. Rules Civ. Proc. 28 U.S.C.A., with reference to set-offs. Consequently, the United States cannot reach out with Briarean arms to gather the benefits accrued and accruing from the acts and doings of its corporate agents; and then draw back under the protection of its sovereign immunity, even while an accounting upon its claim before the referee in bankruptcy is in progress.

It is significant that the contract under which the claims were based was entered into between the Defense Plant Corporation and Globe. Defense Plant was a separate corporation authorized to enter into business transactions and fully authorized to sue and be sued. It had none of the immunities of a sovereign. See Reconstruction Finance Corp. v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595. All payments, adjustments, and credits under the contract were handled directly between Globe and the Reconstruction Finance Corporation. This contract was not with the government. The fact that to the War Assets Administration, as an agency of the United States, was transferred the authority to process these Reconstruction Finance Corporation claims did not bring this particular claim within the meaning of "suits brought by the United States." The Reconstruction Finance Corporation fully approved and agreed to the reimbursable credit at a time when it had

the sole authority to deal with the claim. It is significant here that the Reconstruction Finance Corporation was dealing with such credit claims and not the General Accounting Office, which had nothing to do with the processing of the claim or with the filing of this claim in bankruptcy. The trustee conferred with, dealt with, and litigated this particular matter with, the War Assets Administration, which was solely in charge thereof and which assumed full jurisdiction and authority to deal with this particular matter. In one of its pleadings, the government admitted and allowed a credit of $7,016.82, and made no suggestion that the claim should have been presented to the General Accounting Office, until the date of the hearing before the referee when the War Assets Administration's attorneys took the position for the first time that the $10,929.10 credit was not allowable because it had not been presented to the General Accounting Office pursuant to 28 U.S.C.A. § 774, now 28 U.S.C.A. § 2406. This entire matter was submitted to the bankruptcy court, which had exclusive jurisdiction to deal with it, and it would have been a serious interference with such jurisdiction to require the trustee to present this claim to the General Accounting Office.

The government, in its answer to the bankrupt's cross action and counterclaim for reimbursable costs under Contract No. SIA–5–5, further denied that the bankrupt was entitled to any amount for reimbursable costs on the ground that the bankrupt practiced fraud against the United States in the proof and establishment of part of said claims, and that because of such fraud the entire claim was forfeited. The fraud was alleged to have been perpetrated by the altering of two freight bills by changing their dates from February 7, 1946, and February 9, 1946, to February 6, 1946, so as to indicate that the freight service amounting to $44.05, for which reimbursement was claimed, had been performed under and during the term of Contract No. SIA–5–5, which ended February 6, 1946, and which provided for such reimbursable expense.

The referee in his order found no evidence of fraud or wrongful intent in the submitting of such invoices. The change of dates was not shown to have been made by any Globe agent or employee, and there was no evidence of an intent to defraud. We are not convinced that the referee's finding is clearly erroneous, and for that reason we are not at liberty to disturb it. Furthermore, it appears to us that the government's proof of claim to the extent of $10,929.10 (representing the admitted adjustment from $11,304.96) constitutes a claim for a penalty, in that the claim resulted from the forfeiture of a credit payment theretofore accepted, and hence said claim is not entitled to allowance under Section 57, sub. j of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. j, except to the amount of pecuniary damage shown to have accrued thereby, which was none. We are not convinced that the findings below were clearly erroneous, and the judgment appealed from is affirmed. See Kowalsky v. American Employers Insurance Company, 6 Cir., 90 F.2d 476.

Affirmed.

RUSSELL, Circuit Judge.
I dissent.