**In re INLAND GAS CORP.**

**HARBISON   v.   WILLIAMSON et al.**

**VANSTON   v.   WILLIAMSON et al.**

**KERN   v.   WILLIAMSON et al.**

**GREEN et al.   v.   VANSTON et al.**
Nos. 11905–11908.

United States Court of Appeals,
Sixth Circuit.
March 18, 1954.

John L. Davis, Lexington, Ky., and Robert S. Spilman, Jr., Charleston, W. Va., for Clinton M. Harbison, trustee.

George W. Jaques, New York, N. Y., for Vanston Protective Committee.

Carlos L. Israels, New York City, Leo T. Wolford, Louisville, Ky., on the brief, for Paul E. Kern.

Oscar S. Rosner, New York City, for the Green Committee.

Selden S. McNeer, Huntington, W. Va., for Ben Williamson, Jr., trustee.

David Ferber, Washington, D. C., Henry L. Stern, Washington, D. C., C. J. Odenweller, Jr., Cleveland, Ohio, for Securities and Exchange Commission.

Before SIMONS, Chief Judge, and MARTIN and MILLER, Circuit Judges.

SIMONS, Chief Judge.

The history of this long drawn out reorganization is sufficiently disclosed, for present purposes, in Columbia Gas & Electric Corporation v. United States, 6 Cir., 151 F.2d 461, rehearing and modification denied, 6 Cir., 153 F.2d 101, certiorari denied, 329 U.S. 737, 67 S.Ct. 48, 91 L.Ed. 636, and In re Inland Gas Corporation, 6 Cir., 187 F.2d 813. A final plan of reorganization has now, after much study and amendment, been approved by the district court in its order of February 12, 1953. Its salient features provide for a reorganized corporation to be known as the Inland Gas Corporation. It will take over the subsidiaries of American Fuel and the assets of Inland, debtor. Claims against Inland will be paid in cash or assumed by the new corporation. The trustees of American Fuel and Kentucky, for their bond and note holders, will receive stock. The new corporation's capital stock will be placed in escrow to assure delivery thereof in the event of sale.

In our decision In re Inland Gas Corporation, supra, we directed the District Judge to subordinate the claims of Columbia Gas, because of its inequitable conduct, to those of the holders of Kentucky and American Fuel obligations. There was then a surplus in the assets of Inland over and above its debts and, since the security issues of American and Kentucky were based largely upon their holdings of Inland stock, we concluded that their holders were, in a realistic sense, creditors or quasi-creditors of Inland. We directed the residue of Inland assets to be assigned to American and Kentucky, according to their respective stock interests in Inland, which was 72.-6% for American and 26% for Kentucky. Having perceived a creditor status for the holders of securities supported by Inland stock, we were unable to make any provision for a minor interest of 1.4% of the common stock of Inland held by private investors because they were in no sense creditors.

At the time of this direction, it seemed clear to all of the parties in interest that even with the subordination of Columbia's claims to those of all secured creditors, there would not be enough to satisfy the secured claims. It now appears that by reason of the successful operation by the trustee of Inland its surplus assets will be substantially greater than was at first supposed. It also appears

that American has substantial free assets derived from the payment of Inland's debts to it and the fair value of its solely owned subsidiaries which are to be transferred to the new corporation. There will, therefore, be "overage" to American beyond what is needed to discharge its secured obligations. The plan provides that American's free assets be first applied to their payment and only so much of the 76% of Inland's surplus shall be allocated to American as is needed to complete payment. The balance remaining is to be assigned to the payment of Kentucky's secured obligations. This will give Kentucky something more than 26% of Inland's surplus but will still fall far short of liquidating Kentucky's securities.

Of the objections raised to the fairness of the plan, and overruled below, four are here presented in various related and overlapping appeals. Paul E. Kern is a bondholder of Kentucky, see In re Inland Gas Corporation, 6 Cir., 187 F.2d 813. He contends that the plan's provision for the distribution of Inland's surplus, based upon holdings of Inland stock by American and Kentucky, is unfair and urges that distribution should be made to the public creditors of these corporations according to the face amount of their claims. The Vanston committee which represents Kentucky bondholders takes the same position. Harbison, trustee of American, contends that American's share of Inland's surplus assets should first be applied to the payment of American's notes and that such of its free assets as are not required to pay the balance should be assigned to and become part of American's estate. The Green committee represents American's bond and note holders and contends that the valuation under the plan for Inland's properties is excessive, that the allocations based thereon are unfair to American note holders, and urges a revaluation of Inland's assets. Both Kern and the Vanston committee argue that, to the extent that American note holders are compensated in stock rather than in cash, a "step up" of 10% on the face amount of their claims is excessive. Objections are also made by various appellants, with respect to other "step ups," to the allocation of reorganization expenses and the failure of the escrow provision to provide for distribution in accordance with a future valuation rather than the valuation arrived at by the court. The SEC supports the plan as approved.

We shall not undertake to review again issues that have already been decided. In recognizing the security holders of American and Kentucky as quasi-creditors of Inland and assigning Inland's surplus to them in proportion to their stockholdings of Inland, we gave careful consideration to the interrelationship of the three corporations, reviewed their history and the details of their capital structure. We recognized them as independent corporate entities, even though certain fiduciary obligations flowed from their common control, In re Inland Gas Corporation, 6 Cir., 208 F.2d 13. It is to be observed that our decision in 187 F.2d 813 was not in anywise challenged by a petition for rehearing or one for certiorari to the Supreme Court of the United States. We give no consideration, therefore, to the appeals of Kern and the Vanston committee insofar as they urge that the surplus assets of Inland be considered as those of a single economic entity to be allocated *pari passu* to creditors of American and Kentucky. This would ignore the separate identity of the two corporations and logically suggest a backtracking to subject the total Inland assets to the same process. This no one advocates and in view of the payments already made of Inland's debts may not be accomplished. If the argument that the American Fuel System constitutes a single economic entity has merit, it includes Inland.

Harbison, as trustee of American, felt obligated to appeal from the order approving the plan solely because of the allocation to the secured creditors of Kentucky of more than 26% of the re-

sidual assets of Inland. He contends that the full 72% thereof should first be assigned to the payment of American's obligations and only so much of American's free assets as would then be required for their liquidation. This would result in making the free assets of American available to other creditors and to its stockholders. The only other creditor of American Fuel is Columbia which owns approximately $60,000 worth of convertible gold notes and has a *general* claim of approximately $300,000. If what he suggests is done, the claims of Columbia will have substantial value and there will be equity left for the stockholders of American. In view of the fact that the stockholders were not represented below, he feels it his duty to prosecute an appeal and to present his view of the proper construction of our mandate, in order that the claims of all interested parties would be called to our attention.

■ Read in the light of our discussion in the several opinions cited, we think there is no ambiguity in the mandate of In re Inland Gas Corporation, supra. As we said, 187 F.2d at page 817: "Since this creditor status may practically be recognized only through the medium of Inland stock owned by American and Kentucky * * *, the court is directed to amend the plan of reorganization to subordinate Columbia claims to the stock of Inland and assign the residue of Inland assets over its debts, exclusive of Columbia's claims, to the account of their public creditors according to the respective stock interests of 72.6% for American and 26% for Kentucky." And on page 820 of 187 F.2d, "Columbia claims against American Fuel and Kentucky Fuel will remain subordinated to the claims of their other creditors." It is plain that the respective holdings of Inland stock by the two corporations was used as a measuring device to apportion the several interests of the public security holders of each in the surplus assets of Inland. Precise enough at the time, it

became imprecise only by reason of the wholly unexpected increase in Inland's surplus. The over-all concept, however, is clear. Columbia claims were subordinated to the secured claims against both American and Kentucky. Insofar as the percentage assigned to American is not now needed for complete liquidation of American's secured obligations, it is now available to Kentucky bondholders. True, the subrogation of Columbia claims was compelled by the injury done to both creditors and stockholders, but manifestly in the order of their priority. It would be not only an anomaly but would fly in the face of the rationale of all prior adjudications to permit Columbia, directly or indirectly, to receive any portion of Inland's surplus while the secured creditors of Kentucky were still, to large extent, unpaid. Harbison suggests that Columbia's claim will have substantial value, if his suggestion is followed. Not only that, but there will be equity left for the stockholders of American Fuel. We noted in Columbia Gas & Electric Corporation v. United States, supra, that Columbia had purchased 76% of the common stock of American. In that case, we subordinated Columbia claims to the claims of all other creditors of every class. In our later decision, 187 F.2d 813, we subordinated Columbia claims to the stock of Inland only as a measuring device for the account of the public creditors of American and Kentucky. We did not subordinate Columbia stock to the remaining stock of American Fuel. We are not concerned with Columbia's claims either as creditor or stockholder, unless the debts of American and Kentucky are fully paid. We perceive no unfairness in assigning the overage of American's assets to Kentucky's security holders who are equitably beneficiaries of Columbia's subordination.

■ We reject the contention that the valuation of the reorganized corporation is neither fair nor appropriate under applicable reorganization standards. It was based on substantial per-

suasive evidence produced by unprejudiced experts. Precise, it cannot and may not be. There is no assurance that a new valuation may be more exact, in view of the difficulty in estimating unseen deposits in gas acreage. We are unable to perceive error in the court's finding as to value. A "step up" in allocations, where they are to be made in stock rather than cash, is a conventional device for equalizing distributions where senior security holders are to surrender their priority, Consolidated Rock Products Company v. DuBois, 312 U.S. 510, 529, 61 S.Ct. 675, 85 L.Ed. 982. There was no unfairness in our view in the provision that the $300,000 of estimated reorganization expenses of American should be paid out of the overage to American before assigning the residue to Kentucky's public creditors. Neither was there anything inappropriate or unfair in the escrow provision. A plan fixing participation of creditors as of one date but providing for a sale of all of the properties at another date does not unjustly discriminate against Kentucky security holders. Kentucky creditors might be deprived of additional funds if the sale should be in excess of the reorganized company's reorganization value. On the other hand, Kentucky security holders are protected if the sale should be at less than that value.

The plan as approved by the District Court appears to be fair and feasible. The District Judge has diligently and with great wisdom supervised the reorganization and the development of the plan. Surely, after nearly twenty-five years, there should be an end to this long drawn out litigation, with its delay to security holders and the mounting expense of administration and litigation. Of course, finality is not an end in itself if there be manifest unfairness to any party in interest. None has been demonstrated. The order of the District Court approving the plan is, therefore, in all respects,

Affirmed.