In re **INLAND GAS CORPO-RATION**, Debtor.

In re **KENTUCKY FUEL GAS COR-PORATION**, Debtor.

In re **AMERICAN FUEL & POWER COMPANY** et al., Debtor.

Nos. 12861–12867.

United States Court of Appeals Sixth Circuit.

Feb. 14, 1957.

Selden S. McNeer, Huntington, W. Va., for Ben Williamson, Jr.

Carlos L. Israels, New York City (Leo T. Wolford, Louisville, Ky., on the brief), for Paul E. Kern.

Oscar S. Rosner, New York City, for the Green Committee.

John L. Davis, Lexington, Ky., for Clinton M. Harbison, Trustee.

Robert S. Spilman, Jr., Charleston, W. Va., for the Allen Committee and Edward D. Spilman.

George W. Jaques, New York City, for the Vanston Committee.

Kenneth J. Bialkin, New York City (Walter H. Brown, Jr., New York City, John L. Smith, Catlettsburg, Ky., on the brief), for Committee for Holders of Ky. Fuel Gas Corp. 6½% Debentures.

Edward S. Pinney, New York City (W. John Nauss, Jr., Richard deY. Manning, John F. Hunt, Jr., of Cravath, Swaine & Moore, New York City, on the brief), for the Columbia Gas System, Inc.

David Ferber, Washington, D. C., (Thomas G. Meeker, Aaron Levy, Washington, D. C., Thomas B. Hart, and J. Kirk Windle, Chicago, Ill., and Charles J. Odenweller, Jr., Cleveland, Ohio, on the brief), for Securities and Exchange Commission.

Meyer Rothwacks, Washington, D. C., (Henry J. Cook, Lexington, Ky., Charles K. Rice, Lee A. Jackson, A. F. Prescott, Washington, D. C., on the brief), for the United States.

Before SIMONS, Chief Judge, and MILLER and MARTIN, Circuit Judges.

## SIMONS, Chief Judge.

After more than twenty six years of Receiver and Trustee operation of the Debtors' properties, of litigation delaying reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., of consideration of numerous Plans for reorganization or liquidation and after five submissions and determinations in this Court of numerous issues, the tangled skein is again before us in seven appeals from an order of the District Court by the Trustees, the objecting creditors' Committees, and the proponent of still another Plan of reorganization. The order variously supported and assailed disapproves the latest submitted Plan and directs the Trustees to prepare and file a new Plan of reorganization so designed as to eliminate specific provisions of the submitted Plan and avoid the hazard of a substantial tax liability asserted by the Commissioner of Internal Revenue.

The past history of the debtor corporations is disclosed in the opinions of this Court in Columbia Gas & Electric Corporation v. United States, 6 Cir., 151 F.2d 461, modification denied, 6 Cir., 153 F.2d 101, certiorari denied 329 U.S. 737, 67 S.Ct. 48, 91 L.Ed. 636; In re Inland Gas Corporation, 6 Cir., 187 F.2d 813; In re Inland Gas Corporation, 6 Cir., 208 F.2d 13; In re Inland Gas Corporation, 6 Cir., 211 F.2d 381, certiorari denied Kern v. Williamson, 348 U.S. 840, 75 S.Ct. 45, 99 L.Ed. 662; In re Inland Gas Corporation, 6 Cir., 217 F.2d 207. Their present problems will, likewise, be herein detailed. Due to the insolvency of the Debtors, solution of their difficulties was first sought on December 2, 1930 by an equity receivership, followed since October 15, 1935 by proceedings under § 77B of the Bankruptcy Act and, finally, by corporate reorganization proceedings under Chapter X of the Bankruptcy Act. After much effort to formulate a Plan under the provisions of that Chapter, a Plan entitled "Amended Plan of Reorganization," dated February 12, 1953, was found to be fair, equitable, and feasible, by the District Court, in an order entered on that date, but by reason of a challenge thereto, by appeal to this Court and by certiorari to the Supreme Court circumstances had so changed in respect to the dominant Inland Estate that the Plan could no longer be used without modifications. The important new developments consisted of a substantial increase in the value of the Inland Estate since the earlier approval of the Plan and the receipt by the Trustees of an offer to pay $6,750,000.00 cash for the fixed assets of

Inland and certain subsidiaries of American by the Texas Gas Transmission Corporation. The Court, thereupon, directed the Trustees to amend the reorganization Plan of 1953 to the extent necessary to embody therein the Texas offer and to make appropriate provision for a public auction of the fixed assets of the corporations with the amount of the offer to constitute a fair upset price. The Amended Plan of reorganization was thereafter so modified. It was found worthy of consideration and referred to the SEC. The upset price was in excess of the adjusted basis for Federal income tax purposes of the assets which were to be sold, so, the appellant, Trustee of Inland, applied to the Commissioner of Internal Revenue for a ruling as to whether or not the proposed sale would result in any Federal income tax liability to Inland or its Trustee. It was the Trustee's position that the Texas Plan would fall within reach of § 337 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 337, and that no gain or loss should under its provisions be recognized. A later and better bid was thereafter received from the Tennessee Gas Transmission Company which offered $8,000,000.00 in cash for the same properties which it confirmed by a deposit of $400,000.00. In view of this offer, the Court, on July 14, 1955, directed the Trustees to prepare a new Plan of reorganization, which is the Plan here in controversy. It, like the Texas Plan, provides for the sale of the fixed assets of Inland and the subsidiaries of American, at public auction, to the highest bidder, with the Tennessee offer of $8,000,000.00 as a fair upset price. It provides for the distribution of the net proceeds of the sale and the proceeds of other assets of the Debtor and for the complete dissolution of the debtor corporations. The Texas Plan filed by the trustees, having been found worthy of consideration, was submitted to the SEC, which recommended disapproval. Thereafter the Texas Plan was superseded by the Tennessee Plan, which was submitted to the SEC and, as subsequently amended, was found by the SEC to be fair and equitable and feasible.

The Texas Plan having provided for a complete liquidation of the Debtors, the Commissioner of Internal Revenue, through the Director of Tax Rulings Division, issued a ruling that the proposed sale under the Texas Plan would result in the recognition of gain, for purposes of Federal income taxes. After the substitution of the Tennessee offer for that of Texas, the Trustees applied to the Commissioner for a reconsideration of its ruling but, on December 29, 1955, the Commissioner reaffirmed his original decision. It is estimated that if that decision is correct, the Federal tax involved would be approximately $1,192,-000.00. In objecting to the Plan before it was approved as fair, equitable and feasible, and during the voting on the Plan by the creditors and when confirmation was under consideration, appellant Paul E. Kern relied principally, as grounds for his objections, upon these rulings and as an assumed result of a letter sent by him to all Kentucky creditors, the Plan was not approved by them. Kern was not an original investor in the Kentucky bonds and debentures but began buying Kentucky securities on May 5, 1941 and after the large claims of the Columbia Gas & Electric Corporation were because of its inequitable conduct subordinated to the claims of all other creditors of the Debtors and, because of the successful operations of the Trustee, continued to purchase Kentucky securities throughout the years until he had acquired $303,300.00 face value of first mortgage bonds and a substantial number of Kentucky debentures through 1952, 1953 and 1954 until he owns 34% of the outstanding issue of bonds and some debentures. If the submitted Plan of reorganization is confirmed, it is clear that Kern will reap a very substantial profit upon his purchases, even if the tax claim of the Government is sustained, and a much greater profit if the tax claim is held invalid.

After a hearing, the Court entered its order of March 14, 1956. It considered the petitions of the Trustees of American, Inland and Kentucky Fuel that the Plan last submitted be confirmed, heard counsel for Kern and certain stockholders of American in opposition to confirmation, and counsel for SEC, to the effect that further consideration of the Plan should await a determination of the Federal Income Tax question. Counsel appeared specially for the Attorney General of the United States, the Secretary of the Treasury, the Commissioner of Internal Revenue and the District Director of Internal Revenue for Kentucky and moved to dismiss the petition of the Inland Trustee for want of jurisdiction. The Court was of the opinion that the petition was in effect an application for a declaratory judgment and that under the provisions of the Federal Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, it was without jurisdiction to entertain it. Whereupon, it ordered that the petition of the Trustee be dismissed. It also held that the public holders of bonds and debentures of Kentucky Fuel, being unsecured creditors, were not entitled to post-bankruptcy interest on their claims and, that the Plan is erroneous in allowing such interest, and because the Court lacks jurisdiction and cannot pass upon the tax question, the Plan should not be confirmed. The Court also considered the proposed Kern Plan and, being of the opinion that the Plan was not worthy of consideration for the reason that it proposed to encumber the reorganized corporation with a heavy debt, it held the Kern Plan not worthy of consideration.

We are now advised by the Trustees of the Debtors that the Tennessee offer of $8,000,000.00 for the fixed assets of Inland and of American's subsidiaries has been withdrawn, under a reservation contained in its offer, and that the deposit of Tennessee, as evidence of its good faith, has now been released. In order that the record may be complete as of the date of this opinion, we have asked the Trustees to secure signed stipulations to supplement the record in this respect. We assume that this will be done. We also assume that if a new Plan is submitted and approved which will contain either a provision for the sale of the assets of the Debtors or an internal Plan that will not provide for such sale, the offers of both the Texas and the Tennessee Companies will furnish some guidance to the Court as to their value, whether represented by distribution of cash or stock in a new corporation.

It is apparent that the more important issues, here involved, relate to the validity of the Commissioner's ruling on the taxability of proceeds of sale, if sale is made, and the provision in the Plan for post-bankruptcy interest to the holders of Kentucky bonds and debentures. Minor issues will also be dealt with.

The Tax Question. The Trustees contend, upon advice of counsel, that the Commissioner's ruling is arbitrary and capricious and in disregard of the plain language of § 337 of the Internal Revenue Code of 1954. That Section insofar as pertinent provides that if a corporation adopts a Plan of complete liquidation on or after June 22, 1954 and within the twelve months period beginning on the date of the adoption of such Plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such twelve months period. Their contention is that this language is clear and unambiguous, making interpretation unnecessary; that liquidation is consistent with a reorganization proceeding under Chapter X and that the Plan meets every requirement of the Section involved, if it be given its plain meaning. The Commissioner's contention that the word "distributed" means a distribution of assets to stockholders in cancellation and redemption of stock is a rewriting of the statute by inserting in it the words "to stockholders" after the word "dis-

tributed," so as to make the phrase read "distributed to stockholders in complete liquidation." This, the Trustees say, he is not empowered to do. Moreover, it would be highly inequitable to recognize gain by an insolvent corporation when all of its assets are distributed to its creditors and nothing to its stockholders. Faced with the assertion of what they consider an illegal tax, they petitioned the Court for instructions as to its illegality, and sought injunctive relief against the officials who would assess the tax and undertake to collect it. Moreover, they argue that the Bankruptcy Court, in a Chapter X proceeding, has exclusive jurisdiction to determine the validity of post-bankruptcy taxes; that such taxes are expenses of administration and have so been recognized. They see no practical objection to the District Court passing upon the tax question now rather than following a sale of assets; that the objections thereto are highly technical and specious and should bow to the practical necessity of having the tax question put at rest, in order that an advantageous Plan of reorganization may be confirmed and the long drawn out proceedings brought to an end. They stress the opportunity that has been presented for a successful and prompt reorganization by the $8,-000,000.00 offer received by Tennessee. They say that, if withdrawn, the creditors will suffer and they will have no recourse against the Commissioner or anyone else. (This argument, of course, loses effectiveness by the withdrawal of the Tennessee offer and the release of its deposit.)

The Government, appearing specially, makes no response to the contention of the Trustees that § 337 must be literally applied and that there is no room for interpretation of its terms. It bases its objections to the relief prayed for in the several petitions of the Trustees upon jurisdictional and procedural grounds. There is, it says, no actual controversy in the constitutional sense. There has been no sale of assets, no assessment of taxes, and no effort to collect taxes. No possible taxable event had occurred at the time of the filing of the petitions, or since, and might never occur. The petitioners seek a declaratory judgment, even if what they ask for is not so denominated. It points out that the Declaratory Judgment Act, § 2201 Tit. 28 U.S.C., is limited to actual controversies and contains an express exception that it shall not apply "with respect to Federal taxes." In addition to the prayer for what in reality is a declaratory judgment, the Trustees also sought injunctive relief against the assertion and enforcement of any tax claim in connection with the possible sale of assets under the Plan but such restraint is barred by § 7421 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7421, which provides, with certain exceptions, that no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court. The exceptions refer only to instances where proceedings have been instituted before the Tax Court.

The rulings of the Commissioner are not lightly to be dismissed as arbitrary or capricious, and are based upon the Income Tax Regulations under the 1954 Code, 26 C.F.R. § 1.337–2(b). The problem with which § 337 was concerned arose out of the decisions in Commissioner v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981, and United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251, and the Section was enacted to avoid nice distinctions between whether property was sold by a corporation or in reality by its shareholders. It was thought that technical distinctions were undesirable and § 337 was designed to eliminate them. While the Section speaks in terms of distribution, it is silent as to whom the assets are to be distributed. It may require clarification but that must await the happening of the taxable event. Meanwhile, the hazard of so substantial a tax liability is too great to make the present Plan equitable and feasible. The Congress has provided ample machinery for the

settlement of income tax controversies and the provisions in respect to them are exclusive, subject to exceptions by circumstances not herein demonstrated, for the withdrawal of the Tennessee offer destroys the argument that the Security Holders would suffer irreparable injury if the properties of the Debtors were not disposed of by sale. We do not reach the meritorious question raised by the Trustees with respect to the meaning of § 337 because the Court is barred from considering it by the limitation in the Declaratory Judgment Act and the prohibition contained in § 7421. On either, or both, of these grounds, we sustain the District Court in denying the petition of the Trustees for approval of their last submitted Plan of reorganization.

The Question of Post-Bankruptcy Interest. By our previous decisions, claims of Columbia Gas & Electric Corporation were subordinated to the claims of other creditors rather than rejected, In re American Fuel & Power Co., 6 Cir., 151 F.2d 470, 479. Our specific language was: "Claim of Columbia Gas & Electric Corporation, based upon its ownership of Mortgage Bonds issued by Inland, is not to be rejected but is to be subordinated to the claims of other creditors." In 187 F.2d 813, 819, we said: "The order will be amended by direction to subordinate the claims of Columbia to the public holders of Kentucky and American Fuel obligations secured by pledges of Inland stock in recognition of their creditors status. Columbia claims against American Fuel and Kentucky Fuel will remain subordinated to the claims of their other creditors." We adhered to those rulings. 217 F.2d 207. Following them, Columbia no longer took active part in the reorganization proceedings. No specific statement was made in any of the prior determinations respecting interest on the Kentucky bonds and debentures because at the time it was not apparent that the surplus assets of Inland would be sufficient to pay the principal of such obligations. It now appears that through continued suc-

cessful operation of the Trustees, such Bonds and Debentures can be paid in full with a surplus remaining after such payment; and Columbia has returned to the case with a challenge to the provisions of the present Plan which require that such surplus be applied to liquidate the interest obligations of the Debtors on such securities. It contends that since its claims were not rejected, it is entitled to payment thereon before payment of post-bankruptcy interest, since the Kentucky Bonds and Debentures were unsecured by pledges of the Inland stock held by Kentucky. With this position the District Court was in agreement.

The general rule in bankruptcy and in equity receiverships has been that interest on the Debtors' obligations ceases to accrue at the beginning of proceedings. This is based upon reasoning that interest is a penalty for delay in payment, and where the power of the debtor to pay his contractual obligations is suspended by law, interest during suspension may not be accrued, if the courts are properly to preserve and protect the estate for the benefit of all interests involved. There are, however, well recognized exceptions to this general rule. (1) If the alleged bankrupt proves solvent, post-bankruptcy interest is paid before any surplus reverts to the Debtor. (2) If securities held by a creditor as collateral produce interest or dividends during bankruptcy such amounts are applied to post-bankruptcy interest. (3) If the value of the security is more than sufficient to pay both principal and interest thereon, payment of post-bankrupcy interest is allowed to the date of payment of the claim secured thereby. There was for a period a difference of opinion as to allowance of interest on tax claims. They were considered in some jurisdictions as claims of higher dignity than general claims. This difference has now been resolved by the City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710, and they are now regarded as debts on a par with other debts of the bankrupt.

Whether interest should be allowed upon claims against the bankrupt Debtors is, we think, no longer to be determined by their relative dignity, in the light of the Saper case. Our decision must be reached by balancing the equities as between Columbia and the Kentucky creditors who have waited so long for the payment of their claims. "It is manifest," said Mr. Justice Black, for the majority, in Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 241, 91 L.Ed. 162, "that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been the balance of equities between creditor and creditor or between creditors and debtor." It is clear to the writer from this observation and the rationalization in Sampsell v. Imperial Paper & Color Corporation, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293, In re Deep Rock Oil Corporation, 10 Cir., 113 F.2d 266, certiorari denied, Standard Gas & Electric Co. v. Taylor, 311 U.S. 699, 61 S.Ct. 138, 85 L.Ed. 453, and its predecessor, Taylor v. Standard Gas & Electric Co., 306 U.S. 307, 618, 59 S.Ct. 543, 83 L.Ed. 669, that, as said in Sampsell, 313 U.S. at page 219, 61 S.Ct. at page 907, "The power of the bankruptcy court to subordinate claims or to adjudicate equities arising out of the relationship between the several creditors is complete," and the further observation that "To bring himself outside of that rule an unsecured creditor carries a burden of showing by clear and convincing evidence that its application to his case so as to deny him priority would work an injustice." That such burden is fully borne here and by our earlier decisions amply demonstrated.

We said in 211 F.2d 381, 384: "It would be not only an anomaly but would fly in the face of the rationale of all prior adjudications to permit Columbia, directly or indirectly, to receive any portion of Inland's surplus while the secured creditors of Kentucky were still, to large extent, unpaid." This concept pervades all previous adjudications and includes, by necessary inference, the entire debt owing to Kentucky Bond and Debenture Holders up to the time that they are paid, either in cash or by stock in a newly organized corporation, for Kentucky as well as Inland and American was the beneficiary of Columbia's subrogation resulting from its highly inequitable conduct by which all three of these integrated Debtors were placed under the jurisdiction of the Bankruptcy Court. With such result, the SEC agrees.

Of the remaining appeals and the petition of the Allen Committee, little discussion need be added in the present posture of this proceeding. The SEC complains of the decision of the District Judge to the effect that the Kern Plan for an internal reorganization was not worthy of consideration and, therefore, should not be submitted to the Commission. The Court having directed the Trustees to frame and submit a new Plan of reorganization, which may or may not contain a provision for sale of the properties, or which may or may not submit some form of internal reorganization, there will be time and opportunity to consider such new approach to the problems here involved. We may not speculate at this time in respect to the provisions of the new approach or whether the Court will find it worthy of consideration by the SEC. Until such Plan is submitted, we make no decision upon the grievance of the SEC. The Allen Committee has suggested that there are changed circumstances which warrant the reopening by this Court of its prior decisions holding the public creditors of Kentucky entitled to be treated as creditors of Inland Gas before the claims of Columbia Gas or the stockholders of Inland may be recognized. The holders of Kentucky bonds and debenture asks us to dismiss the petition of the Allen Committee on the ground that it runs counter to our previous determinations, presents no changed circumstances calling for retreat therefrom, and moves its dismissal, as well as that of Spilman, representing Stockholders of American, on the ground that

both are frivolous and without merit. Undoubtedly, the petitions, if sustained, would mean a reopening of determinations previously, and repeatedly, made. We decline to do so. The motion to dismiss will be sustained and the petition of the Allen Committee and Edward D. Spilman will be dismissed.

The seven appeals from the order of the Court, entered March 14, 1956, so variously approve and disapprove of that order and respond variously to contentions of appellants and appellees that it would be difficult and confusing to frame a specific mandate in each case to implement our holdings herein. The writer thinks it sufficient, therefore, to direct the dismissal of the petitions of the Allen Committee and Edward D. Spilman in case No. 12865, and to direct that a single mandate be entered in each of the appeals, amending the order of the District Court in the single respect that it holds post-bankruptcy interest may not be recovered by the holders of Kentucky bonds and debentures and, as so amended, affirming the order, without ruling on the merits of the SEC contention that the Kern Plan be submitted to it for consideration. With this my colleagues do not wholly agree.

Since it now appears from the concurring opinions of my brothers that while they concur in all respects with the above opinion, save only in the view that post-bankruptcy interest shall be allowed on the Kentucky bonds and debentures, it follows that the order of the district judge is not to be amended but that in all respects it must be and it is hereby affirmed.

Wherefore, the petition of the Allen Committee and Edward D. Spilman is hereby dismissed and the order of the District Judge is hereby,

Affirmed.

**MILLER, Circuit Judge.**

I concur with the views and ruling of the foregoing opinion except insofar as it expresses the view that post-bankruptcy interest should be allowed to the public holders of bonds and debentures of Kentucky. In that respect I agree with the ruling of the District Judge who was of the view that the proposed plan of reorganization should not be approved because, in addition to the uncertainties resulting from the undetermined tax question, it erroneously provided for the payment of post-bankruptcy interest.

As stated in the opinion, the general rule in bankruptcy and in equity receiverships is well settled that interest on the debtor's obligations ceases to accrue at the start of bankruptcy proceedings. Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 163, 67 S. Ct. 237, 91 L.Ed. 162; Sexton v. Dreyfus, 219 U.S. 339, 344, 31 S.Ct. 256, 55 L.Ed. 244; City of New York v. Saper, 336 U.S. 328, 330–331, 69 S.Ct. 554, 93 L.Ed. 710. There are two well-recognized exceptions to this general rule. (1) If the alleged "bankrupt" proves solvent, creditors receive post-bankruptcy interest before any surplus reverts to the debtor, and (2) if securities held by a creditor as collateral produce interest or dividends during bankruptcy, such amounts are applied to post-bankruptcy interest on the secured debt. American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., 233 U.S. 261, 267, 34 S.Ct. 502, 58 L.Ed. 949; City of New York v. Saper, supra, 336 U.S. 328, at page 330, 69 S.Ct. 554, at page 555, Note 7. This Court and some other courts have recognized a third exception, namely, where the value of the security is more than sufficient to pay the principle of the debt secured, the excess should be applied to post-bankruptcy interest on the obligation so secured. In re Macomb Trailer Coach, 6 Cir., 200 F.2d 611, 613, certiorari denied McInnis v. Weeks, 345 U.S. 958, 73 S.Ct. 940, 97 L.Ed. 1378, with cases cited therein.

Appellants atempt to avoid the effect of the rule disallowing post-bankruptcy interest on unsecured claims by taking the position (1) that the bonds of Kentucky are secured claims, or (2) if they are unsecured claims, the claims of Columbia should be rejected rather than

subordinated, which would eliminate any contest between Columbia and the public holders of bonds and debentures of Kentucky. We have rejected these contentions in prior appeals. The Court in the present case is unanimous in its view that those rulings be adhered to. For the purposes of our present case we accordingly must consider Columbia's claim as an existing valid claim, but subordinated in rank to the payment of other creditors.

Such subordination does not in any way change the rule that post-bankruptcy interest is not payable on an unsecured claim as long as other claims which have been allowed remain unsatisfied. Under the ruling in Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 and Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281, the Court had authority to disallow the claim of Columbia. Having declined to do so, Columbia is entitled to stand upon its rights as a creditor, even though a subordinated one. When all other creditors are paid in the manner which the bankruptcy law recognizes as payment in full, the subordination has been carried out and the creditor is entitled, as a creditor, to its rights in the remaining assets. Jamison v. Federal Deposit Insurance Corp., 5 Cir., 149 F.2d 199, 200. A denial of this right is in substance a rejection or disallowance of the claim, which this Court has heretofore declined to do.

Appellants in effect urge upon us a fourth exception to the general rule, namely, that post-bankruptcy interest should be paid to an unsecured claim of a higher rank before any payment is made to a claim of a lower rank. They contend that it is immaterial whether the difference in rank arises out of the contractual terms of the creditors' claims or because one creditor has been subordinated to other creditors because of the inequitable and unconscionable conduct of the subordinated creditor, as in the present case.

I do not believe the authorities support that contention. On the contrary, such a contention appears to me to be expressly rejected by the Supreme Court in City of New York v. Saper, supra, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710. The tax claim in that case on which post-bankruptcy interest was denied was of a higher ranking than claims of general creditors. Section 64, sub. a(4), Bankruptcy Act, Sect. 104, sub. a(4), Title 11, U.S.C.A. The Court said 336 U.S. at page 337, 69 S.Ct. at page 559: "The Court of Appeals concluded that by the 1926 Amendment and the Chandler Act, Congress assimilated taxes to other debts for all purposes, including denial of post-bankruptcy interest. We think this is a sound and logical interpretation of the Act after those amendments to §§ 64, sub. a, and 57, sub. n [11 U.S.C.A. § 93, sub. n]." The same rule has been held applicable in a reorganization proceeding under Chapter X, United States v. Edens, 4 Cir., 189 F.2d 876, affirmed 342 U.S. 912, 72 S.Ct. 357, 96 L.Ed. 682. See also: United States v. General Engineering & Mfg. Co., 8 Cir., 188 F.2d 80, affirmed 342 U.S. 912, 72 S.Ct. 358, 96 L.Ed. 682; Pavone Textile Corp. v. Bloom, 302 N.Y. 206, 97 N.E.2d 755, affirmed sub nom., United States v. Bloom, 342 U.S. 912, 72 S.Ct. 357, 96 L.Ed. 682; Commonwealth of Massachusetts v. Thompson, 1 Cir., 190 F.2d 10, certiorari denied 342 U.S. 918, 72 S.Ct. 364, 96 L.Ed. 686; Sword Line v. Industrial Commissioner, 2 Cir., 212 F.2d 865, certiorari denied 348 U.S. 830, 75 S.Ct. 53, 99 L.Ed. 654; National Foundry Co. of New York v. Director of Internal Revenue, 2 Cir., 229 F.2d 149. The exception was not recognized by this Court in New York Trust Co. v. Detroit, T. & I. Ry., 6 Cir., 251 F. 514. To the same effect is Jamison v. Federal Deposit Insurance Corp., supra., 5 Cir., 149 F.2d 199; United States v. Paddock, 5 Cir., 187 F.2d 271, 276; Application of Progress Shoe Co., D.C.E.D.N.Y., 107 F.Supp. 114, 116; Squire v. American Express Co., 131 Ohio St. 239, 260, 2 N.E.2d 766.

Appellants rely upon Vanston Bondholders Protective Committee v. Green, supra, 329 U.S. 156, 67 S.Ct. 237, 240,

91 L.Ed. 162. Although the Court expressed the view in the opinion in that case that there should be a balancing of equities between creditors, it also restated the general rule that in bankruptcy and in equity receivership "interest on the debtors' obligations ceases to accrue at the beginning of proceedings." The actual ruling in the case was a disallowance of interest on interest on secured claims. The Court pointed out, 329 U.S. at page 166, 67 S.Ct. at page 241, that where the failure to pay interest when due is the result of an order of the bankruptcy court, entered for the joint benefit of debtor, creditors and the public, it was not consistent with equitable principles to enrich the mortgage bondholders at the expense of subordinate creditors, even though their mortgage contract called for the payment of interest on interest. We have a similar situation in the present case.

In re Deep Rock Oil Corp., 10 Cir., 113 F.2d 266, certiorari denied Standard Gas & Electric Co. v. Taylor, 311 U.S. 699, 61 S.Ct. 138, 85 L.Ed. 453, lends some support to appellants' contention. However, the ruling is based largely upon three cases, one of which was American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., supra, 233 U.S. 261, 34 S.Ct. 502, 58 L.Ed. 949, which involved secured claims rather than unsecured claims, and two cases involving interest on tax claims which were decided contrary to and prior to the ruling in City of New York v. Saper, supra. These cases furnish no real support for the ruling.

I am of the view that the public holders of bonds and debentures of Kentucky are not entitled to the payment of post-bankruptcy interest. I concur in the views of Judge Martin, hereinafter expressed, with respect to the tax phase of the controversy.

MARTIN, Circuit Judge.

In my view, the judgment of the district court should be affirmed in entirety. It is elementary that, except in certain situations not applicable here, the courts of the United States have jurisdiction only where granted, both by the Constitution of the United States and by an Act of Congress. It is equally basic that the Congress has power to limit the jurisdiction of the inferior courts and has often done so. The requirement of a minimum jurisdictional amount in certain cases is an example of such Congressional limitation.

The Declaratory Judgments Act, section 2201 of Title 28, U.S.C. provides: "In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes*, any court of the United States * * * upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." [Emphasis added.]

The argument urged is that jurisdiction to adjudicate the tax question raised in the petition dismissed by the district court is not based upon the Declaratory Judgments Act and therefore is not subject to its interdiction "with respect to Federal taxes."

The Trustee insists that he, as Trustee of the debtor corporation, is an officer of the bankruptcy court; and that, in such capacity, he has the right and also the duty to petition the court for advice and instructions concerning disbursement of funds of the debtor's estate to the taxing authorities. His contention is that the bankruptcy court as a court of equity has jurisdiction to adjudicate finally the rights of the parties, even though these rights be based upon future contingencies; and that it is the duty of the court to exercise its jurisdiction in this respect.

The *source* of jurisdiction is not determinative of the issue here. The question for decision is whether or not the Congress had *withdrawn* from United States Courts the jurisdiction to adjudicate tax matters before the occurrence of the taxable event. In my judgment. the Federal Declaratory Judgments Act

has withdrawn from the courts of the United States jurisdiction to adjudicate prematurely matters "with respect to Federal taxes."

The Trustee contends that such inhibition of the Federal Declaratory Judgments Act does not apply, for the reason that the jurisdiction of a federal court sitting in bankruptcy to entertain a trustee's petition for instructions is not founded upon that Act. But the *source* of the jurisdiction is unimportant where jurisdiction has been withdrawn subsequently by the Congress. Appellant's brief invites attention to the fact that the "absence of a federal declaratory judgments statute did not deter the District Court from rendering a decision on a petition for instructions in the case of Scott v. Western Pacific R. R. Co." 9 Cir., 1917, 246 F. 545, 546. Appellant points to the following language in that opinion: "Receivers are officers of the court, and by all authority may properly ask instructions from the court concerning the administration of the property in their hands. [Citing authorities.] That the question presented to them involves payment of taxes does not change the rule." The interdiction of the Federal Declaratory Judgments Act has changed this rule with respect to taxes. Therefore, I do not consider that the authority cited gainsays the conclusion reached here.

Appellant advances several arguments to support the proposition that the Federal Declaratory Judgments Act created a new form of action in the federal courts and was not intended to limit existing remedies. He directs attention to the title of the statute, "Creation of [a] remedy," and quotes the Senate Committee Report in relation to the Act, which states: "The proposed section 274d would simply extend declaratory relief to other cases, provided the parties and the subject matter are within the jurisdiction of the federal courts, in the same way that such relief has been extended in England. * * *"

Study of the history of the Act reveals that the words "except with respect to Federal taxes" upon which this issue turns were not a part of the original statute, but were inserted by amendment in 1935. 49 Stat. 1027. Therefore, the quoted Senate Report would have no bearing. Even if this were not true, it is difficult to believe that an act creating new remedies would not modify standing remedies where inconsistent with the new legislation. *A fortiori,* an express prohibition cannot be nullified simply because a contrary rule is in effect at the time of the new enactment.

Appellant attaches some importance to the fact that he, as Trustee of the debtor corporations, is an officer of the court and that under the surrounding circumstances these corporations are not ordinary taxpayers, inasmuch as they are engaged in a reorganizational liquidation under Chapter X of the Bankruptcy Act. The Congress has announced public policy in this matter in section 960 of Title 28, U.S.C., as follows: "§ 960. Tax liability. Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."

From the above language, it is clear that the Trustee of the debtor corporations is on the same footing with any other taxpayer. As a practical matter, there would seem to be no reason why the law should be otherwise. A *solvent* corporation engaged in a reorganization may have an equally large amount of tax liability, contingent upon the outcome of litigation subsequent to the occurrence of a potentially taxable event. There is no reason why an *insolvent* corporation should be in a preferred position. The possible loss of a favorable business transaction is insufficient reason of itself to create the extraordinary circumstances necessary for the injunctive relief sought by appellant. The Internal Revenue Code of 1954, section 7421,

states the general rule: "(a) Tax. * * * no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." This restraint against injunctive action is not absolute. The Supreme Court has recognized this modification: " * * * in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector." Miller v. Standard Nut Margarine Co., 284 U.S. 498, 509, 52 S.Ct. 260, 263, 76 L.Ed. 422.

This court has held that any exception to the universality of the application of section 7421 of the Internal Revenue Code must turn upon "present extraordinary and entirely exceptional circumstances." John M. Hirst & Co. v. Gentsch, 6 Cir., 1943, 133 F.2d 247, 248. We stated there that the "circumstances that are to be considered extraordinary or exceptional have never, of course, been catalogued." In my judgment, departure from the clear statutory prohibition is not warranted in the present circumstances.

Inasmuch as the United States District Court had no jurisdiction over the subject matter in the tax phase of this proceeding, it is unnecessary to consider whether there was personal jurisdiction over the several taxing authorities and whether the rulings of the Commissioner as to the effect of section 337 of the Internal Revenue Code are correct.

I am in accord with the conclusion of Judge MILLER, for the reasons stated by him, that post-bankruptcy interest should not be allowed to the public holders of the bonds and debentures of Kentucky Fuel Gas Corporation.

The order of the United States District Judge dismissing the Trustee's petition for adjudication of the tax liability for lack of jurisdiction should, in my judgment, be affirmed.