244 F.2d 207
 UNITED STATES of America, Appellant-Appellee,
v.
David CENTER et al., Appellees-Appellants.
David CENTER et al., Appellees-Appellants
v.
UNITED STATES of America, Appellant-Appellee.
 No. 16314.
 United States Court of Appeals Fifth Circuit.
 May 1, 1957.
Rehearing Denied May 29, 1957.
 
 Charles D. Read, Jr., Asst. U.S. Atty., James W. Dorsey, U.S. Atty., Atlanta, Ga., for appellants.
 James M. Roberts, Cohen, Roberts & Kohler, Atlanta, Ga., for appellees.
 Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.
 TUTTLE, Circuit Judge.
 
 
 1
 The United States appeals from a judgment of the trial court sitting without a jury in a suit brought by it for the recovery of a balance alleged to be due from the sale of aluminum products by the War Assets Administration. The basis of the Government's appeal is that the trial court allowed a reduction in the amount of the Government's recovery by reason of two alleged breaches of other contracts by which the War Assets Administration agreed to sell additional aluminum which it later refused to deliver.
 
 
 2
 The defendants in the trial court also appeal by cross-bill from a denial of the trial court of their claim of damages from the breach of additional alleged contracts to sell aluminum which the War Assets Administration thereafter withdrew from sale.
 
 
 3
 Numerous interesting questions of Government contracting procedures and remedies for the breach of contracts of sale by Government agencies are presented by the respective briefs of the parties. In the view we take of the matter, however, only one of these questions need be resolved-- that is when the Government sues for the balance due on a contract of sale may the defendant set off against the admitted purchase price a claim which had not previously been presented to and disallowed by the General Accounting Office?[1]
 
 
 4
 Concluding as we do that this question must be answered in the negative, it is not necessary for us to consider the other points raised by the appeal and cross-appeal.
 
 
 5
 Only the facts necessary to an understanding of the court's conclusion on this controlling question need be stated.
 
 
 6
 During the years 1946 and 1947 appellees in the principal appeal, whom we shall hereafter speak of as defendants, made contracts with various offices of the War Assets Administration, under which they purchased various quantities of aluminum, having previously established a credit of $100,000 with the Administration. Some deliveries were made but other sales alleged by defendants to have been made were cancelled. The defendants contend as to the cancelled sales that they were damaged by the refusal of the Administration to make deliveries at the contract price, to the extent of the difference between the contract price and the market value at the time of the breach.
 
 
 7
 This litigation was commenced by the filing of a suit by the United States seeking a recovery (after the abandonment of one item) of $31,496.67. The defendants claimed damages under their setoffs of $33,251.56, representing four separate classes of claims. Of these the trial court found in their favor to the extent of $9,247.41 on one set of claims, and $315.50 on another, rejecting their claims of $22,154.02 and $1,534.63, on the ground of a failure of proof to support them. The Government contends that the court erred in allowing the two items because it is admitted by defendants that no claims were filed with the General Accounting Office, and the defendants contend that the court erred in not finding in their favor with respect to the two items disallowed.
 
 
 8
 As we have previously stated, we do not consider it necessary to pass upon the question whether or not the trial court had jurisdiction to entertain a setoff or counter-claim of the sort here asserted as to the item of $22,154.02, this being in excess of the jurisdictional amount of $10,000 for which an original suit could be filed by defendants against the United States under the Tucker Act, 24 Stat. 505 (see 28 U.S.C.A. § 1346(a)(2)).[2] Nor need we pass upon the question whether or not there was sufficient evidence of the execution of a contract for the sale of the aluminum, the alleged breach of which gave rise to the $22,154.02 claim, nor whether such claim, if originally valid, was barred by the six year statute of limitations.
 
 
 9
 The trial court, discussing the requirement of section 2406 that before evidence supporting the defendant's claim for a credit can be admitted he must first prove that such claim has been disallowed by the General Accounting Office, held that the filing of a claim with the War Assets Administration satisfied this requirement. The court based this conclusion on the provisions of section 204 of the Federal Property & Administrative Services Act of 1949, 40 U.S.C.A. § 485, referring particularly to subsections (d) and (g) thereof.[3]
 
 
 10
 Having in mind the precise nature of the claims here asserted by the defendants-- that is claims for damages for lost profits for a breach of a contract of sale, we think it quite clear that nothing in this statute gives to the General Services Administrator the power to allow such claims and withdraw federal funds for the payment of such claims. In light of the express requirement of section 2406 that such claim be presented to the General Accounting Office, something more than the limited authority of another agency of the Government to make refunds to purchasers on the rescission of a sale or the settlement of any right of the Government with respect to a credit where credit has been extended must be found to create an exception to its requirements. Moreover, it is not at all plain that even the powers granted under subsection (d) as to refunds to purchasers would be operative as to transactions concluded several years before the enactment of the Property Management Act, since the authorization for the creation of the special account is prospective by its terms and there is no indication that there was any such fund from which claims for refunds resulting from 1946 transactions could be paid, even if the authority to make such payment as to future transactions and rescissions was granted by subsection (d).
 
 
 11
 It is apparent that the authority to make refunds refers to the repayment of the purchase price received from vendees in case the sale is later rescinded or any warranties that had been made in its connection had been breached. This is quite different from authority to settle an unliquidated claim for damages for lost profits where a breach of a contract of sale is involved on which the purchaser had not yet made any payments to the Government.
 
 
 12
 As to subsection (g), it seems clear that the authorization there was to permit the Administrator to settle the claims of the United States arising out of credits authorized under the War Assets Administration's operation, but not to make payments on claims for breach of contracts asserted by debtors of the Government.
 
 
 13
 There is nothing in United States ex rel. Skinner & Eddy Corp. v. McCarl, 275 U.S. 1, 48 S.Ct. 12, 72 L.Ed. 131, that would authorize a holding that the submission of a claim either to the War Assets Administration or to the General Services Administrator would satisfy the requirements of section 2406.
 
 
 14
 There are numerous cases applying this statute. See in this Circuit Fitzsimmons v. United States, 5 Cir., 54 F. 812, and see 3 Moore, Federal Practice P13.26 at 67, 68, and cases there cited. The only exceptions called to our attention or which we have been able to find from the rigid requirements of section 2406 are in instances in which legislation authorizes the adjustment and payment of the claims of the nature here asserted by an independent government corporation or other agency. Cf. United States ex rel. Skinner & Eddy Corp. v. McCarl, supra, and United States v. Paddock, 5 Cir., 187 F.2d 271. Obviously if an agency of the Government has no power to allow the claim there is no reason for permitting a submission to it to satisfy the requirement that it be submitted to the General Accounting Office. A careful review of the action by the War Assets Administration and the General Services Administration in this very case clearly indicates that these Government agencies declined consideration of the breach of contract claims because they had no funds out of which such damage claims could be paid. Thus the final denial of the $22,251.02 claim stated: 'The claim appears to be solely for loss of anticipated profits and it is well settled that claims for anticipated profits which are in the nature of claims for unliquidated damages for breach of contract may not be paid or adjusted under appropriations, in the absence of specific provision therefor in the appropriation.'
 
 
 15
 Similar language was used in the rejection of the claim for $9,247.41 relating to the Detroit transaction and of the claim for $1,534.63, which the trial court found was not supported by the evidence. This supports our construction of the provisions of 40 U.S.C.A. § 485(d) above, it appearing that no special fund or deposit had been authorized for the disposition of unliquidated claims for breach of contract under the Surplus Property Act of 1944, 50 U.S.C.A. Appendix, § 1611 et seq., and nothing in subsection (d) itself created such fund or granted such authority. Congress has therefore not authorized any exception here to the requirement that any counter-claim or set-off of in the nature of an unliquidated claim for damages for breach of contract must first be submitted to the General Accounting Office and be disallowed before being available to reduce the amount of the Government's claim.
 
 
 16
 The two groups of claims allowed by the trial court, both having been unliquidated claims for damages for breach of contract, and not having been presented to the General Accounting Office for its action, were improperly allowed as credits against the claim of the United States. The two other groups of claims disallowed by the court being subject to the same infirmity, the trial court did not err in not allowing them. The judgment is affirmed to the extent that it permitted recovery by the United States and is reversed to the extent that it reduced the Government's claim by the defendants' cross-claims.
 
 
 17
 The case is remanded for entry of judgment in accord with this opinion.
 
 
 
 [1]
 ' § 2406. Credits in actions by United States; prior disallowance
 'In an action by the United States against an individual, evidence supporting the defendant's claim for a credit shall not be admitted unless he first proves that such claim has been disallowed, in whole or in part, by the General Accounting Office, or that he has, at the time of the trial, obtained possession of vouchers not previously procurable and has been prevented from presenting such claim to the General Accounting Office by absence from the United States or unavoidable accident. June 25, 1948, c. 646, 62 Stat. 972.'
 28 U.S.C.A. § 2406.
 
 
 [2]
 On this issue it might be questionable whether a district court could entertain jurisdiction to pass on such a claim even to the extent of allowing it up to the jurisdictional amount of $10,000. Thompson Foundry & Machine Co. v. United States, D.C.M.D.Ga., 67 F.Supp. 121; Pioneer Gen-E=Motor Corp. v. Department of the Army, D.C.N.D.Ill., 135 F.Supp. 871. But the Supreme Court in its opinion in Matl. City Bank of New York v. Republic of China, 348 U.S. 356, 363, 75 S.Ct. 423, 428, 99 L.Ed. 389, stated: 'An American * * * could counterclaim-- to the extent of the Government's claim-- in a suit by the United States in any court, 28 U.S.C. § 2406, 28 U.S.C.A. § 2406; * * *'; however, the precise question as to the construction of 2406 was not before the Court in the National City Bank case
 
 
 [3]
 'Special account deposits
 '(d) Any Federal agency disposing of surplus property under this subchapter (1) may deposit, in a special account with the Treasurer of the United States, such amount of the proceeds of such dispositions as it deems necessary to permit appropriate refunds to purchasers when any disposition is rescinded or does not become final, or payments for breach of any warranty, and (2) may withdraw therefrom amounts so to be refunded or paid, without regard to the origin of the funds withdrawn.
 'Management of credit, leases, and permits on property
 '(g) Where credit has been extended in connection with any disposition of surplus property under this subchapter or by War Assets Administration (or its predecessor agencies) under the Surplus Property Act of 1944, or where such disposition has been by lease or permit, the Administrator shall administer and manage such credit, lease, or permit, and any security therefor, and may enforce, adjust, and settle any right of the Government with respect thereto in such manner and upon such terms as he deems in the best interest of the Government.'
 40 U.S.C.A. § 485(d), (g), 63 Stat. 388, as amended, 68 Stat. 1051 (formerly 40 U.S.C. § 485(c), (f)).